UNITED SERVICES LIFE INSURANCE
COMPANY, Appellant,

v.

Joan Flores DELANEY, Appellee.

No. 19531.

United States Court of Appeals
Fifth Circuit.

Sept. 26, 1962.

Rehearing Denied Oct. 26, 1962.

Wisdom, Circuit Judge, dissented.

Bond Davis, San Antonio, Tex., for appellant.

Horace P. Shelton, Jr., San Antonio, Tex., for appellee.

Before CAMERON, WISDOM and GEWIN, Circuit Judges.

CAMERON, Circuit Judge.

Robert H. Delaney was killed May 8, 1959 while he was on a night training flight in an Army airplane of the United States, while he was pilot and sole occupant of the plane which crashed. At the time of his death he was the insured in a life insurance policy issued by appellant United Services Life Insurance Company in which his wife, Joan Flores Delaney, appellee, was the beneficiary. She made demand on the Insurance Company for the payment of $20,000.00, the face of the policy, and upon the rejection of her demand, brought this action to recover that amount, together with statutory damages, attorneys' fees and interest. Appellant had, before suit, tendered to her the amount of premiums which the deceased had paid on the policy, and it paid the amount into court upon appellee's refusal of the tender and the beginning of this civil action.

The appellant plead that it was not liable under its policy on the ground that "the provisions contained in the LIMITATION DUE TO AVIATION HAZARD portion of the policy, are clear and unambiguous in providing that the liability of the Company under certain specified circumstances shall be limited to the premiums paid or the net reserve at the time of death." The Company plead further that, even if the language of the policy, taken alone, should be considered ambiguous, such ambiguity was removed by the actions of the parties and the construction placed thereon by them.

The case was tried by the court below without a jury upon admissions of, and stipulations as to the, facts by the two parties. Upon a written opinion filed by the court, now published in 201 F.Supp. 25, judgment was entered in favor of appellee and against appellant for the sum of $25,900.00, which by subsequent order was corrected to the sum of $28,600.00. We copy a portion of the opinion of the court below as epitomizing the facts before it and its decision upon them:

"In his application dated September 28, 1957, the insured, at that time a Lieutenant in the United States Army, stated, among other things, that he had applied for army aviation; that he had been accepted in the Judge Advocate's branch; that he did not then desire aviation; and that he would decline aviation if he was accepted. By an amendment to the application, dated the same day, the following provision was added:

" 'Limitation Due to Aviation Hazard

" 'If this policy shall become a claim by death of the insured due to any service, training, travel, flight, ascent or descent in, on, or from any species of aircraft at anytime, *except death resulting from travel as a passenger on an aircraft owned and operated by the United States Government* or as a passenger on a scheduled passenger air service regularly offered between specified airports, the liability of the company under this policy shall be limited to the premiums paid hereunder or to the then net reserve at time of death, if greater; any provision in this policy to the contrary notwithstanding.' * * * [Emphasis supplied.]

"When the policy was issued, it contained a rider incorporating the provision above quoted, and the words 'Limitation Due to Aviation Hazard included,' were typed on its front and back. It was in full force and effect when the insured died on May 8, 1959 of injuries received as the pilot and only occupant of an aircraft owned and operated by the United States government, which crashed near Spring Branch, Texas, while on a night training flight. At the time of his death, the insured was receiving incentive pay and was on duty as a regular officer. * *

"The plaintiff claims that she is entitled to judgment, because when the insured was killed, he was a 'passenger' in an aircraft owned and operated by the United States government; therefore, his death was clearly within one of the exceptions to the aviation rider.

" * * * There is no language in the aviation rider involved herein which would compel a different conclusion, and 'the intent of the policy to exclude the pilot is not so certain as to make it wholly unreasonable to say that he was included.' Since the Warren Case * * * was decided more than four years prior to the date the policy herein was issued, it is even more significant that the insurer, after being put on notice, did not exclude the pilot 'beyond question, by the simple insertion of a phrase such as "and not as the pilot." '

"The defendant, however, points to the fact that the insured was admittedly on a training flight, and says that according to the plain language of the aviation rider his death was excluded from the coverage.

"Plaintiff, on the other hand, argues that such language can reasonably be interpreted to mean that it applies in the event the death of the insured was due to any aviation training, *except* as a result of travel as a passenger on an aircraft owned and operated by the United States government; that the insurance company chose the words and is bound by them; that the language of the insurance policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured; and that since the insured, as the pilot, under the law, was a 'passenger' on a government owned and operated aircraft, his death was covered by the policy, despite the fact that he was on a night training flight.

"It certainly cannot be said that plaintiff's argument is unreasonable, even if it could be said that the defendant's interpretation constitutes 'a more likely re-

flection of the intent of the parties.'
* * * "

Based upon these holdings and its findings that while the conduct of the insured suggested the possibility that he did not think his training as a student pilot was covered by the policy, the conclusion that he knew and understood that he did not have such coverage does not follow therefrom as a matter of law, the trial court rejected the defenses interposed by the Insurance Company and held that the appellee was entitled to recover the face of the policy, $20,000.00, with interest, the twelve percent penalty provided by law, and $3,500.00 attorneys' fees stipulated by the parties to be reasonable.

We gather that the trial court was constrained to its conclusion by the decision of the Supreme Court of Texas—it being conceded that Texas substantive law governs—in Continental Casualty Co. v. Warren, 1953, 152 Tex. 164, 254 S.W.2d 762, affirming the decision of the Court of Civil Appeals of Texas, Fort Worth, 1952, 248 S.W.2d 315, which, in turn, reversed the judgment of the District Court of Harris County, Texas. After a close study of that case we conclude that the principles of law established by it control the decision of this case and we affirm the judgment of the court below.

The Warren case grew out of a suit based upon a policy indemnifying Warren's employer against loss resulting from injury sustained by him in consequence of riding as a passenger in a Beechcraft Aircraft owned by the employer. The insurance company answered the suit brought by Warren's widow and urged a special exception to her petition "asserting that since said petition alleged that Jesse C. Warren * * * was piloting the aircraft when the fatal injury occurred, he was not in fact riding as a passenger and therefore was not covered." [1] The District Court of Harris County sustained this special exception, but its action was reversed by the Court of Civil Appeals.

We bring together a portion of two paragraphs (248 S.W.2d pages 316–317) of the Court of Civil Appeals' opinion which constitute the gist of its holding:

"Since the insurance policy before us for construction did not specifically exclude the pilot from coverage, we must therefore resort to fundamental rules of interpreting life insurance policies which have been handed down by our courts, such as, terms of the policy must be interpreted in the light of common sense; that the language of an insurance policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured. * * * that any ambiguity in an insurance contract drafted by the insurer will be resolved in favor of the insured and against the insurer * * *.

"If the parties intended for the contract to eliminate coverage of the pilot, it could have so provided by using some reasonable term, such as 'exclusive of pilot,' or, 'this policy does not cover the pilot, mechanics or any person riding in the plane employed by the assured to manipulate, to work on, to supervise, or to assist in operation of the plane.'"

In addition to the quoted language, the Court of Appeals devoted nearly half of its opinion to a careful consideration of the meaning of the word "passenger," quoting from dictionaries and textbooks,

---

1. The exact language of the policy involved in that case is this:

"'Injury' wherever used in this policy means bodily injury caused solely by an accident occurring while the policy is in force and resulting directly and independently of all other causes in loss covered by the policy, provided such injury is sustained by the insured person in consequence of riding as a passenger in, boarding, alighting from, making a parachute jump from (for the purpose of saving his life) or being struck by the twin engine six passenger-place Beechcraft Aircraft * * * which aircraft * * * is piloted by a person who holds a valid and current certificate of competency of a rating authorizing him to do so." 248 S.W.2d 315.

and concluding that, as used in the policy before it, the word "passenger" is used "in the ordinary sense with the word 'occupant.'"

The Supreme Court of Texas went into the decision of the Court of Civil Appeals at great length and with great particularity, and what the Supreme Court intended to hold is brought into sharp focus by the vigorous dissenting opinion in which four of the justices concurred. The dissenting opinion emphasized that, if Warren was to be protected while he was piloting the plane, the use of the words "piloted by a duly licensed pilot" is surplusage and without meaning. It, too, explored the authorities and quoted from a decision by the United States Supreme Court and from the Uniform State Law for Aeronautics to demonstrate that a plane passenger is considered to include only "any person riding in an aircraft, but having no part in its operation."

The dissent also pointed out that the policy contained a statement that it was issued in consideration of the payment of "an annual term premium of $750.00, calculated at the rate of $125.00 per annum for each passenger-place in the aircraft herein described." It also gave weight to the fact that the limit of indemnity for each person was $25,000, and for each collision was $150,000, emphasizing that the latter figure was the product obtained by multiplying $25,000 by six, the number of passenger seats in the plane.

Notwithstanding this determined position taken by four members of the court, the Supreme Court of Texas, taking note of the foregoing argument, held categorically (254 S.W.2d 763):

"But for the fact that insurance policies are governed by the special rule of construction, which is a familiar part of our jurisprudence, we might, indeed, hold either that the interpretation against liability of the insurer should prevail or that, the policy being ambiguous, there is a fact issue as to what was intended.

Yet the rule, of course, applies, and under it the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable. * * * For all the particular considerations reasonably indicating that the pilot is not covered, there are yet others making it not unreasonable to say that he is, and that the insurer is therefore liable."

The majority acknowledged that each of the arguments advanced by the dissenters had the appearance of validity, taking up each facet of the dissenting opinion and disposing of its arguments one by one. It emphasized repeatedly the firmly established Texas rule that those who sell insurance policies and have the privilege of writing them had better use the clearest of language if they would escape liability to claimants who, under the common parlance of the layman, are able to bring themselves within the ambit of the risks insured against by any argument approaching reasonableness.

Witness the expressions appearing in the course of the majority's answer to the arguments of Continental as adopted by the dissenting opinion: " * * * It thus operates as an indirect sort of exclusion or exception clause and should accordingly be very clear insofar as it is to deny application of the insurance." And again, "But, there is no such clear exclusion of the pilot anywhere in the policy, and the insurer thus has to bottom its position on the risk or 'injury' definition proviso * * *." [2] Further, "The noun 'pilot' nowhere occurs, and the participle 'piloted' could just as well have been 'driven' or 'flown'"; and, "The inference that the pilot is excluded from coverage is only an inference and a rather remote one." [3] And the majority opinion ends with this sentence:

"Since, therefore, the intent of the policy to exclude the pilot *is not so*

2. 254 S.W.2d 764.

3. Page 766 of 254 S.W.2d

*certain as to make it wholly unreasonable to say that he was included,* the judgment of the Court of Civil Appeals so holding should be affirmed and it is so ordered." [Emphasis added.]

█ A consideration of the two appellate decisions in Continental v. Warren leaves us convinced that the facts of this case cannot be distinguished from the controlling facts of that case, and that, sitting as we are as a Texas Court, we are bound to follow that decision and hold that Robert H. Delaney was not excluded from coverage by the "Limitation Due to Aviation Hazard" provision of his insurance contract.

As in Warren, the noun "pilot" nowhere occurs in the limitation. With the teachings of Warren before it, the appellant could have eliminated the insured from coverage while he was piloting a government plane by the use of a few simple words. It did not do so and, under the Texas rule, it cannot escape coverage by the insertion of the vague and general wording of the limitation upon which it relies.

The court below, sitting as finder of the facts as well as judge of the law, set forth the correspondence between the insured and the insurance company, and concluded that there was considerable doubt as to the meaning of the writings which passed between the two. It concedes that the conduct of the insured "suggests the possibility that he did not think his training as a student pilot was covered by the policy, but the conclusion that he knew and understood that he did not have such coverage does not follow therefrom as a matter of law. He might just have reasonably have had in mind a desire for additional coverage which would include, for example, travel in a privately owned plane, in a non-scheduled airliner, and in a plane owned by a flying school training fliers under government contract, none of which was then covered by the policy." The court concluded, therefore, that the evidence did not justify finding that the insured understood that his death while piloting a govern-

ment plane would not be covered by the insurance.

█ In our opinion the trial court was justified in placing the construction it did upon these writings. At all events, they do not justify the holding that they were any more than the statements of the respective contentions of the insurer and the insured; and nothing contained in the writings could be construed as cancelling the insurance policy we have held to be in force, or as surrendering any rights vested in the insured or his beneficiary under its terms.

Being of the opinion that the judgment of the court below is right, it is affirmed.

WISDOM, Circuit Judge (dissenting).

I respectfully dissent.

I would hold the parties to the plain meaning of everyday words used in their ordinary sense in an unambiguous contract. I decline to aid and abet in the verbocide of the good word "passenger".

We do not have here a question of the applicability of a broad, established principle of state law. We have a narrow little question turning on the extension to this case of language of a particular insurance policy interpreted by a Texas court in a single case, Continental Cas. Co. v. Warren, 1953, 152 Tex. 164, 254 S. W.2d 762. When a litigant, waving Erie and pointing to a single precedent, demands a theirs-but-to-do-or-die decision that "black" is "white", "yes" is "no", or a "passenger" is a pilot operating an aeroplane in flight, the certainty that the single precedent does indeed compel an Erie decision should be a lot more evident than is evident to me in this case.

I would distinguish Warren. In that case the policy was ambiguous in several respects. There is no ambiguity here, unless it can be said that thanks to Warren the word "passenger" is always ambiguous and may in an insurance policy always be taken to include a "pilot". A review of the opinion shows that Warren stands for no such proposition. Its holding is rigorously restricted to a construction of a policy that, read as a whole, was equivocal.

The important fact in Warren was that the policy was issued to a business firm and was intended to *insure all the firm's employees*. The Texas Supreme Court emphasized this fact at the start and throughout its opinion:

> "We start with the initial broad statement that 'every officer, employee or guest' of the policyholder is, in the very words of the insurer itself, an 'insured person'. This naturally suggests to the ordinary reader that all of the class mentioned—which, of course, includes the pilot—is insured for such risks and with such limitations as may follow in the rest of the policy."

Thus, in Warren the pilot was clearly an "insured person" in a large group all of whom apparently were meant to be covered under the policy. The conflict between this provision and the clause dealing with the injury covered produced an ambiguity absent here.

After pointing out again that the pilot was an "employee" and "in the insurer's own words 'an insured person'", the Texas Supreme Court said that the question was whether it is "beyond the broad pale of reason" to say that such an insured person is excluded by succeeding provisions in the policy. The majority, through Chief Justice Garwood, found "no such clear exclusion"; the insurer had to bottom its position on the definition of risk or injury covered. This definition allowed recovery for injury "sustained by the insured person as a consequence of (1) riding as a passenger in, (2) boarding, (3) alighting from, (4) making a parachute jump from (for the purpose of saving his life) or (5) being struck by" the plane. (Numerals supplied.) The court reasoned that the pilot "would be covered because (a) he is 'an insured person' under the initial paragraph and (b) the insured risk came to pass"—unless "the mere word 'passenger' * * * excluded him." The court alluded to broad definitions of "passenger", but it did not base its holding on the broadness of the meaning of the

word. On the contrary, the court "conceded that the full phrase, 'riding as a passenger in,' does suggest a meaning of 'passenger' as a non-operative of the plane." The court relied on the policy as a whole: "other provisions of the policy have logical bearing on the intended coverage". Going back to the enumeration of the five risks, the court found that, "grammatically speaking, any requirement of the insured person being a passenger in the sense of non-operator applies only to the 'riding' risk and to none of the other four." The court said:

> "Thus keeping 'as a passenger' in the place where the insurer itself firmly located it, the result is that as to all the five risks, except possibly that of 'riding,' every non-passenger 'insured person' would be covered, if he were injured by the risk, and this, of course, includes the pilot as an 'employee' of the policyholder and accordingly 'an insured person.' If we say that the pilot is a non-passenger and thus excluded from the 'riding' risk, we reach the extraordinary result that he is covered, for example, for a parachute drop, and yet not covered for a crash of the plane. * * * If a construction of non-liability under one part of a contract would operate to produce an absurd result from the contract as a whole, that fact has clear logical relevance to whether the construction should or should not be adopted. It is interesting to note that, on the oral argument, the insurer's only explanation of this apparent oddity of covering the pilot for one risk and not another was that 'as a passenger' must be read into each separately enumerated risk. If that is so, the insurer is placed in the rather clearly untenable position, that no 'insured person'—plane operator or otherwise—is insured unless he be a 'passenger.' If it is not so, we have a policy that both excludes and includes the pilot, unless we construe 'passenger' in the sense of 'occupant' and thereby in-

clude the pilot and other 'insured persons' for all the risks."

In view of the language in the Continental Casualty Co. policy, it is not surprising that the Texas court resolved the ambiguity in favor of the "insured person", the employee. The case stands only for the proposition that, construing the entire policy, *the mere word "passenger" cannot be said to exclude the pilot; the court did not hold that a "pilot" is a "passenger".*

That, however, is what the plaintiff would have this Court hold, notwithstanding an otherwise unambiguous policy. In this case, when Robert Delaney, the insured, made his application for insurance, he was a lieutenant in the United States Army. He had applied for Army aviation training. Delaney filled out and signed an insurance form, *"Request for Amendment"* for a provision entitled, *"Limitation Due to Aviation Hazard".* This amendment contains the critical language:

> "If this policy shall become a claim by death of the insured due to any service, training, travel, flight, ascent or descent in, on or from any species of aircraft at any time, except death resulting from travel as a passenger on an aircraft owned and operated by the United States Government or as a passenger on a licensed aircraft operated by a licensed passenger pilot on a scheduled passenger air service regularly offered between specified airports, the liability of the Company under this policy shall be limited to the premiums paid hereunder or to the then net reserve at time of death, if greater; any provision in this policy to the contrary notwithstanding * * *."

The *Request for Amendment* also contains a statement reading:

> "I certify that I have done no flying except as a passenger under conditions outlined since——none ——."

Typed on the front and back of the policy were the words "Limitation Due to Aviation Hazard included".

At the time of his death, Lieutenant Delaney was the pilot and sole occupant in an official Army aircraft under the operational control of the Second Armored Division, Fort Hood, Texas. The official Army report stated as the cause of his death: "Injuries. Officer was pilot of an aircraft which crashed while on a night training flight". He was a "regular" officer "on duty", receiving "incentive pay for flying".

In the Warren case, the Court could not have arrived at the conclusion it reached without finding that the policy as a whole was ambiguous. The insurer's construction of the one word "passenger" conflicted with a reasonable construction of other provisions and was inconsistent with the purpose and meaning of a policy intended to cover all employees. On the other hand, here the critical words are clear; the clause does not conflict with other policy provisions; the insurer's view of the meaning of the clause is consistent with the policy and the construction the insured himself placed on the policy; there is good reason to distinguish between a training flight piloted by Delaney, an inexperienced pilot who had requested training, and a flight as a passenger on a government operated plane or a scheduled passenger plane. There is therefore no occasion to resort to the familiar principle that equivocal words should be construed against the insurer.

There is not the shadow of a doubt, in my mind, that the parties *said* and intended to say that the policy excluded coverage for death resulting from injuries to an Army pilot in a training flight. We have no license to change the contract. Here, Warren is only a ghost; it casts no shadow.

## On Petition for Rehearing

WISDOM, Circuit Judge (dissenting).

I respectfully dissent.

I still feel that Continental Casualty Company v. Warren, 1953, 152 Tex. 164, 254 S.W.2d 762 does not justify the verbocide of the word "passenger".