**PAUL REVERE LIFE INSURANCE COMPANY, Appellant,**

v.

**FIRST NATIONAL BANK IN DALLAS,** Administrator of the Estate of Loy Thomas Brown, Deceased, Appellee.

**No. 19604.**

United States Court of Appeals Fifth Circuit.

March 31, 1966.

Gewin, Circuit Judge, dissented.

Pinkney Grissom, Jerry L. Buchmeyer, Dallas, Tex., Thompson, Knight, Wright & Simmons, Dallas, Tex., of counsel, for appellant.

Earl Luna, John W. Collins, Jr., Dallas, Tex., for appellee.

En Banc before TUTTLE, Chief Judge, and BROWN, WISDOM, GEWIN, BELL, THORNBERRY and COLEMAN, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

■ The issue in this case is whether coverage of an airplane pilot is afforded under an insurance contract which excepts death or disability resulting from flight in an aircraft except as a passenger on a civilian plane. In an *en banc* opinion dated February 4, 1964, we abstained from deciding the issue in this case, and in United Services Life Insurance Co. v. Delaney, another case involving a similar issue, and instructed the appellants in the two cases to institute declaratory judgment proceedings in the Texas State courts for determination of coverage, a state question which presented the single issue in each of the cases. United Services Life Insurance Co. v. Delaney, 5 Cir., 1964, 328 F.2d 483, cert. den., 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298. Following this decision, a panel of the court abstained in a third case for the same reasons. St. Paul Mercury Insurance Company v. Price, 5 Cir., 1964, 329 F.2d 687.[1]

A declaratory judgment proceeding was then instituted by appellant in this

---

1. Judges Hutcheson, Rives, and Jones have become Senior Judges since the abstention opinions. Judges Thornberry and Coleman have become members of the court since the abstention opinions and they participate by virtue of 28 U.S.C.A. § 46(c).

case in the District Court of Dallas County, Texas, and that court rendered judgment to the effect that the death of the insured was not covered by the policy in question. The appellant in the *St. Paul Mercury* case obtained a judgment in the District Court of El Paso County, Texas, to the same effect. In the *United Services Life Insurance Company* case, the District Court of Bexar County, Texas, held that it had no jurisdiction to hear the petition for declaratory judgment and dismissed. The dismissal was affirmed by the Court of Civil Appeals of Texas, United Services Life Insurance Company v. Delaney, 1964, 386 S.W.2d 648; and by the Texas Supreme Court, 396 S.W.2d 855. The *St. Paul Mercury* and the *Paul Revere* proceedings were dismissed for want of jurisdiction following the Supreme Court decision.

Thus each of the three cases are again before this court for decision. We here consider only the appeal of *Paul Revere Life Insurance Co.*

Decedent purchased three insurance policies under a package plan from Paul Revere Life Insurance Company. The first was a life policy in the principal amount of five thousand dollars. The second was an accident policy with coverage of ten thousand dollars in the event of death, while the third was an accident policy of another type contracting to pay one thousand dollars in the event of death. It was stipulated that decedent was killed while piloting, operating and in control of a private plane which crashed. His wife and three other passengers in the plane were also killed. The plane, a Model A–35 Beech Bonanza was owned by Cross Country Flying Club, Inc.

The coverage under the life policy was paid, but appellant refused to pay under the accident policies on account of the following exception contained in each of the policies:

"I. Exception. This policy also does not cover death or disability resulting from flight in aircraft except as a passenger on a civilian plane under Clauses A, B, and C and as a fare-paying pasenger on a civilian plane under Clause D * * *."

Clauses A, B, and C of the ten thousand dollar policy are reprinted in pertinent part in the margin for clarity.[2] It is to be noted that A, B, and C are the regular coverage clauses while D provides double indemnity where the accident is to a pub-

2. "SPECIFIC LOSSES

"A. If such injuries result in continuous total disability from the date of the accident and within six months of the accident in any of the losses named below, the Company, in addition to any other indemnity payable under this policy, will pay for one and only one (but in any event the larger) of such losses.

"Death .......... The Principal Sum

\*   \*   \*   \*   \*   \*

"MONTHLY ACCIDENT INDEMNITIES

"B. TOTAL DISABILITY—ACCIDENT. If such injuries result in continuous total disability within ninety days from the date of the accident, requiring the regular and personal attendance of a licensed physician, the Company will pay during the continuance of such disability —Two Hundred—Dollars per month so long as the insured shall live and remain so disabled. The maximum benefit period for any such disability commencing after age sixty-five, if covered under this policy, is set forth in Clause G.

"C. PARTIAL DISABILITY—ACCIDENT. If such injuries shall continuously from the date of the accident partially disable the insured, or if such partial disability immediately follows total disability for which indemnity is payable under Clause B, and the disability in any such case requires the regular and personal attendance of a licensed physician, the Company will pay one-half of the indemnity provided under Clause B per month for the period of such disability, for not exceeding six months.

"D. DOUBLE INDEMNITY—TRAVEL ACCIDENTS. If such injuries are caused by an accident to a public conveyance while the insured is traveling as a fare-paying passenger therein, or by an accident to an automobile of pleasure design when it is being used for pleasure purposes only and while the insured is traveling therein, any indemnity payable under Clause B as a result of such injuries will be doubled during the period for which such indemnity is payable, for not exceeding one year.

\*   \*   \*   \*   \*   \* "

lic conveyance and the insured is traveling therein as fare-paying passenger. The one thousand dollar policy contained no double indemnity clause.

It was also stipulated that decedent was a citizen and resident of the State of Texas when he purchased the insurance in question, that the policies were contracted for and issued to him in the State of Texas and that he was continuously a citizen and resident of Texas from the date the policies were issued until the date of his death. The plane crashed in Oklahoma.

The District Court granted summary judgment for appellee in the amount of the coverage together with penalty and attorneys' fees. The holding was premised on the view of the District Court that the case of Continental Casualty Company v. Warren, 1953, 152 Tex. 164, 254 S.W.2d 762 was controlling. We disagree and reverse.

The facts, including the policy language, in Continental Casualty Company v. Warren, supra, were wholly different from those in the instant case. The majority of the Texas court deciding *Warren* deemed an ambiguity to exist and applied the rule of construing the ambiguous language more strongly against the insurer, and coverage was thus found. There is no ambiguity here. The facts are undisputed. And where the applicable language of the policy is clear and unambiguous, it must be treated as in any other contract; giving such meaning to the language as will carry out and effectuate the intention of the parties. It is only where there is uncertainty as to the meaning of a contract or some portion thereof that rules of construction are to be applied. General American Indemnity Company v. Pepper, 1960, 161 Tex. 263, 339 S.W.2d 660.

Here the appellant agreed to pay subject to the provisions and limitations contained in the policy. One of these was that no payment would be made for death resulting from flight in an aircraft except as a passenger on a civilian plane. It was necessary for appellee to show that

decedent was a passenger. Any question regarding the type of plane and the status of decedent in the plane, may be eliminated. He was killed in a civilian plane, but he was the pilot of the plane. The question turns on whether he was a passenger as well.

The District Court created an ambiguity on the basis of the difference between a passenger under Clauses A, B, and C, and a fare-paying passenger under Clause D, the double indemnity provision. Of course, there is a clear difference in the risk especially when the injuries sustained under Clause D must result from an accident " * * * to a public conveyance." Moreover, the double indemnity clause is not applicable to death coverage. It merely doubles the disability payment under Clause B. These differences in risk and coverage do not in the least give rise to an ambiguity, but taking this *non sequitur* as a base, the District Court applied the rule of construction that an insurance policy must be construed more strongly against the insurer and reached the conclusion that decedent pilot was riding as a passenger.

The fallacy of assuming the ambiguity so as to place the case within the strict construction rule of *Continental Casualty* led to the error. In that case the policy was issued to the employer of the decedent pilot to cover officers, employees and guests. The critical language of that policy was:

"That it will indemnify the employer for loss resulting from *injury* sustained by any officer, employee or guest of the employer (herein individually called insured person); to the extent herein provided.

" '*Injury*' wherever used in this policy means bodily injury caused solely by an accident occurring while the policy is in force and resulting directly and independently of all other causes in loss covered by the policy, *provided such injury is sustained by the insured person in consequence of riding as a passenger in, boarding, alighting from, making a parachute jump from (for the purpose of saving his life) or being*

*struck by the twin engine six passenger-place Beechcraft Aircraft D18S, License NC 80496,* owned by the employer, which aircraft at the time of the accident is flying with the consent of the Employer in or between the Continental United States, Mexico and Canada and is piloted by a person who holds a valid and current certificate of competency of a rating authorizing him to do so." [emphasis added]

The ambiguities in this language with respect to the question in issue are clear even to a casual reader. The insurance company argued that it was implicit that only passengers on planes were included. The majority of the court thought that the term "passenger", mentioned only in the "injury" definition, related to the riding risk and not to the others. Thus, for example, the pilot might be covered while making a parachute jump but not while continuing as pilot. The strong dissenting opinion urged that there was no ambiguity and that the pilot was excluded from coverage.

■ The conclusion reached was that the term "passenger" was used in the sense of "occupant" and that the pilot, an occupant, was not excluded. This followed from a construction of the contract as a whole. It was an airplane accident policy insuring the officers, employees and guests of the employer-owner of a particular plane. The pilot was included as an employee and it was necessary for the insurance company to show that he was excluded. Any exclusion had to be found in the risk coverage which was contained under the definition of "injury". The majority conceded that the phrase "riding as a passenger in" suggested a meaning of "passenger" as a non-operative of the plane. They said that the other language in the contract which had logical bearing on the intended coverage had to be considered. This resulted in an ambiguity which made the contract susceptible of more than one construction, and brought into play the rule that it should be interpreted strictly against the insurer who prepared it and liberally in favor of the insured. Once a construction is in order, the insured need only offer an interpretation which is not in itself unreasonable. Lloyds Casualty Insurer v. McCrary, 1950, 149 Tex. 172, 229 S.W.2d 605. The court did not hold that a pilot is also a passenger. It held that the risk coverage in the particular policy under consideration did not exclude the pilot.

■ The *Paul Revere* policy language is clear, and it is not disputed that decedent was the pilot of a civilian plane. The coverage excepted death resulting from " * * * flight in aircraft except as a passenger on a civilian plane." The question is whether the pilot was also a passenger. There is no additional language in the contract, as was the case in Continental Casualty, which has logical bearing on the intended coverage. And we cannot say that the word "passenger" on its face includes the pilot or operator of a plane. The term is not inherently ambiguous when used in its common or popular meaning. The statement of Mr. Justice Stone speaking for the Supreme Court in Aschenbrenner v. United States Fidelity & Guaranty Company, 1934, 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137 is analogous:

" * * * the word 'passenger' * * * has a common or popular meaning * * *. In its usual popular significance the term, when applied to one riding on a train, indicates a traveler, intended to be transported for hire or upon contract with the carrier, and distinguishes him from those employed to render service in connection with the journey."

We hold that common or popular meaning of "passenger" does not include the pilot. The District Court erred in placing its own construction on the contract. The language of the exception was plain. The insurance company was due to prevail.

Reversed and remanded for further proceedings not inconsistent herewith.

GEWIN, Circuit Judge (dissenting):

The majority should not overrule and reverse the decisions of two United States District Judges from Texas, both of whom have had long and varied experience in deciding Texas law, without citing even one Texas case to support its conclusion on the chief issue here presented. Judge Spears of the Western District is overruled in United Services Life Insurance Company v. Delaney; and Judge Davidson of the Northern District in Paul Revere Life Insurance Company v. First National Bank in Dallas, by opinions rendered simultaneously on this date, 358 F.2d 714, and 359 F.2d 641.

The lame and specious distinction by which the majority opinion undertakes to sweep aside the decisions of these two judges and the controlling case from the Texas Supreme Court, Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762, affirming the Court of Civil Appeals of Texas, 248 S.W.2d 315, is unwarranted, illogical and insupportable in Texas law.

It is important to remember that the decisions of the two United States District Judges of Texas were rendered independently of each other, at different times and in separate district courts, with respect to different insurance policies. Even so, both reached the same conclusion for substantially the same reason—ambiguity in the meaning of the word "passenger." Both decisions were rendered prior to our decision in Delaney, 5 Cir., 308 F.2d 484 (1962). If these two United States District Judges are correct, as they surely must be, then the majority is also overruling the decisions of the Court of Civil Appeals of Texas com-

posed of three Texas judges, and five justices of the Supreme Court of Texas, making a total of ten Texas judges who have held the meaning of the word "passenger" to be ambiguous.[1] See Continental Casualty Co. v. Warren, supra; Delaney v. United Services Life Insurance Company (W.D.Texas 1961) 201 F. Supp. 25. The decision by Judge Davidson is not reported.

I take my stand with the Texas judges on what constitutes Texas law. That is our duty under the Erie Doctrine, whether or not we like the Texas law.

The first PLAIN ERROR of the majority is the following unsupportable conclusion:

"The term ["passenger"] is not inherently ambiguous when used in its common or popular meaning."

\* \* \* \* \* \*

"We hold that common or popular meaning of 'passenger' does not include the pilot."

The majority opinion is anchored to the two quoted sentences; both are wrong. If the quoted statements are the law of Texas, the following statements from the Texas *Warren* decisions have been overruled; the two are in direct and irreconcilable conflict with each other:

"We find the word *'passenger' has no universal or inflexible meaning* which will apply to all cases. There is stated in 13 C.J.S., Carriers, § 544, p. 1047: *'It is difficult to lay down a comprehensive definition of the word "passenger,"* or to exhaust in a single statement all the possible circumstances under which the relation of carrier and passenger may exist \* \* \*.'* Webster's Twentieth Century Dictionary defines

---

1. The following schedule of dates is significant:
   1952—April 11    —Decision of Texas Court of Civil Appeals in *Warren*
   1953—January 18    —Decision of Texas Supreme Court affirming *Warren*
   1961—December 27 —Decision by Judge Spears in *Delaney*
   1962—February 9    —Decision by Judge Davidson in *Paul Revere*
   1962—September 26—Decision of this Court in *Delaney*
   1962—October 26   —Denial of application for rehearing in *Delaney*

   Policy Dates in Question

   1957—October 1    —Effective date of *Delaney* policy
   1958—May    —Effective date of the policy in *Paul Revere*

'passenger' as 'one who passes on his way; a traveler; a pilgrim; a wayfarer; * * *.'" 248 S.W.2d at 316 (Emphasis added)

The Supreme Court of Texas affirmed the foregoing statement by the Texas Court of Civil Appeals and stated in its own opinion that the word "passenger" is ambiguous:

"Now the mere word *'passenger'* cannot be said to exclude the pilot, although, here too, the insurer might have excluded him beyond question by the simple insertion of a phrase such as 'and not as the pilot.' As sufficiently demonstrated in the opinion of the court below, such dictionary definitions as give the word a significance of nonoperator of the vehicle concerned *are but one of several definitions given by the same work, while common parlance undoubtedly* uses it at times in the sense of 'occupant' of a private vehicle, as in the familiar expression 'a six-passenger automobile.' We are cited to no decision fixing the meaning to exclude the operator of a private vehicle, which the aeroplane in question here undoubtedly was, and the significance of *'passenger'* as applied to common carriers has little relevance to a situation where no carriage for hire, public or private is involved." 254 S.W.2d at 764 (Emphasis added)

The error of the majority opinion and the correctness of the Texas decision as to the ambiguous nature of the word "passenger" is further demonstrated by the fact that over 70 pages in *Words and Phrases* are devoted to decisions by hundreds of courts from every geographical area of the nation defining and construing the meaning of the word "passenger" and its various connotations. See Vol. 31A, Words & Phrases, (Perm. Ed.) p. 15, et seq.

Another difficulty with the majority is the fact that they fail to come to grips with the *Warren* decision. They refuse to recognize the question there presented, the defense asserted by the insurance company, and the ultimate holding of the

court. I offer the following analysis of the *Warren* decision:

*The Question as Stated by the Texas Court:*

"The question raised by appellee's special exception is founded upon *construction to be given the word 'passenger'* as used in the 'injury' clause of the policy." (Emphasis added)

*The Insurance Company's Defense According to the Texas Court:*

"Appellee answered fully and urged a special exception to appellant's petition, asserting that since said petition alleged that Jesse C. Warren, an employee of Callery & Hurt, Inc., *was piloting* the aircraft when the fatal injury occurred, he was not in fact riding as a *passenger* and therefore was not covered." (Emphasis added)

*The Holding of the Texas Court:*

"However, we note here that the word *'passenger'* is used in general terms and *will not be given the same construction as it usually carries* in connection with cases involving the transportation of persons *for hire*. As we view it, the word *'passenger'* is used here in the ordinary sense with the word 'occupant'. An automobile is usually described in terms of the number of pasengers it was built to transport, including the driver, that is, 'a five passenger car,' etc. To some extent, this same ordinary interpretation applies to private airplanes.

"The policy describes the plane in question as being a twin engine six passenger-place Beechcraft aircraft, which statement, no doubt, would be construed by a layman to include a place for the pilot. *The least that can be said is that it is susceptible to two interpretations.*"

\* \* \* \* \* \*

"We find the trial court erred in sustaining appellee's [insurance company] special exception." (Emphasis added)

All of the foregoing quotations become even more pertinent in light of the ma-

jority's statement of the question to be decided:

> "The issue in this case is whether coverage of an airplane pilot is afforded under an insurance contract which excepts death or disability resulting from flight in an aircraft except *as a passenger* on a civilian plane." (Emphasis added)

Another SERIOUS ERROR in the majority opinion is a failure to recognize the proper burden of proof. If the insurance company is not liable, it must bring itself within the exclusionary provisions of the policy. Such burden is on the insurance company. The majority has stated:

> "And we cannot say that the word 'passenger' on its face includes the pilot or operator of a plane."

The Texas Supreme Court correctly followed the rule when it stated that there was no decision "fixing the meaning to exclude the operator of a private vehicle" —the airplane in this case. Otherwise stated, it is the burden of the insurance company to show that the insured was excluded from coverage because it is only by the exclusionary clause that the insurance company escapes liability. See opinion by Judge Bell in State Mutual Life Insurance Co. v. Dorsey, et al. (March 1966), 357 F.2d 600.[2] Laymen do not write insurance policies. Insurance companies do the writing, they do the selling,

and they are experts in the business. They are their own draftsmen and lexicographers. If their lexicography and draftsmenship condemn them, they must suffer the consequences. If the law were otherwise, the layman would always lose as a victim of the "fine print."[3]

The decision of the majority becomes more shocking and upsetting, and its manifest error is magnified and brought into sharper and more vivid focus by the fact that both of the policies involved in two cases pending in this Court (Paul Revere Life Insurance Company v. First National Bank in Dallas, Administrator of the Estate of Loy Thomas Brown, deceased; United Services Life Insurance Company v. Joan Flores Delaney) were written *after* the *Warren*[4] decision wherein the Texas Court of Civil Appeals stated:

> "If the parties intended for the contract to eliminate coverage of the pilot, it could have so provided by using some reasonable term, such as 'exclusive of pilot,' or, 'this policy does not cover the pilot, mechanics or any person riding in the plane employed by the assured to manipulate, to work on, to supervise, or to assist in operation of the plane.' "

The Supreme Court affirmed the Texas Court of Civil Appeals and stated:

> " * * * the insurer might have excluded him beyond question by the sim-

---

2. Although dealing primarily with the law of Georgia, undoubtedly Judge Bell stated the general rule:
   "We must apply the pertinent principles of law to these facts in determining the validity of the appeals. It is undisputed that Messrs. Robinson and Murphy met their deaths by reason of an accident and State Mutual asserts the exclusion in bar of recovery. The burden is on the insurer in such event to show that the deaths fall within the contract exclusion."
   In dealing with the defense of the insurance company asserting that the term "chartered aircraft" operated to exclude coverage, Judge Bell's language is also interesting on that question:
   "We agree that the term was ambiguous. This being so, and if the ambigu-

ous language can be construed in two ways, then the interpretation which is most favorable to the insured must be placed upon it."

3. The universal application of this rule is demonstrated by the following quotation from the *Aschenbrenner* case, infra, so heavily relied upon by the majority:
   "Nothing in the policy gives any hint that words in this clause are used more narrowly than those in any other. The insurer has chosen the terms and *it must be held to their full measure in this clause*, as in any other, whether its promise be for more or less." (Citing cases) (Emphasis added)

4. See footnote 1.

ple insertion of a phrase such as 'and not as to the pilot.' "

Judge Spears (and I) also considered this a significant factor and stated:

"Since the Warren Case, supra, was decided more than four years prior to the date the policy herein was issued, it is even more significant that the insurer, after being put on notice, did not exclude the pilot 'beyond question by the simple insertion of a phrase such as "and not as the pilot." ' "

In order to bolster its holding, the majority abandons Texas law and seeks to justify its position by quoting from Aschenbrenner v. United States Fidelity and Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137 (1934), in which the United States Supreme Court dealt with the word "passenger" in a railroad common carrier case.[5] The Texas Supreme Court dealt with that subject in *Warren* and stated:

" * * * the significance of 'passenger' as applied to common carriers has little relevance to a situation where no carriage for hire, public or private, is involved."

Assuming the existence of a conflict between the statement from *Aschenbrenner* and the statement from the Texas Supreme Court, which one should we follow in dealing with Texas law? The answer is unequivocal and undisputed under every rule. We must follow Texas. Professor Moore in his work Federal Practice (2nd ed.) ¶ 0.309 [2], Vol. 1A, p. 3238 states the rule:

"Federal courts have similarly used their discretion where questions have

arisen in the ascertainment of the state's common law. If there are no decisions exactly in point, relevant data in the shape of analogous decisions which afford a reasonably satisfactory basis for a conclusion as to the state law should be followed, *even though contrary to a decision of the federal Supreme Court* when exercising an independent judgment on the same point. The federal court must consider related decisions, analogies, and any reliable data tending convincingly to show what the state law is." (Emphasis added)

Lastly, as indicated in the beginning, we should not overrule two United States District Courts of Texas for light or transient reasons. As the Supreme Court said in Bernhardt v. Polygraphic Co., 350 U.S. 198, 204, 205, 76 S.Ct. 273, 277, 100 L.Ed. 199, 206 (1956):

"Since the federal judge making these findings is from the [local] bar, we give *special weight* to his statement of what the [local] law is." (Emphasis added)

Again, the Supreme Court speaking in MacGregor v. State Mutual Life Assurance Co., 315 U.S. 280, 282, 62 S.Ct. 607, 86 L.Ed. 846, 848 (1942) stated:

"No decision of the [state supreme court], or any other court of that State, construing the relevant [state] law has been brought to our attention. In the absence of such guidance, we shall leave *undisturbed* the interpretation placed upon purely local law by the [local] federal judge of long experience * * *." (Emphasis added)

5. We quote the full text from *Aschenbrenner*, partially quoted by the majority, wherein Mr. Justice Stone dealt with the word "passenger":

"We think the word 'passenger' can not be restricted to the technical meaning which may be assigned to it by the law of common carriers, for it also has a common or popular meaning which would at least include the insured who, with a ticket in his possession, was riding on the steps of the train. In its usual popular significance the term, when applied to one riding a train, in-

dicates a traveller, intending to be transported for hire or upon contract with the carrier, and distinguishes him from those employed to render srevice in connection with the juorney. (citing cases) None of the standard dictionaries defines the term in a fashion suggesting that its meaning is to be limited in terms of the legal liability of the carrier. While for the purposes of judicial decision dictionary definitions often are not controlling, they are at least persuasive that meanings which they do not embrace are not common."

For the foregoing reasons I respectfully dissent. It is with regret that one must come to the realization that the beneficiaries of these insurance policies, purchased by deceased loved ones for the benefit of such beneficiaries, will be denied the protection purchased for them by those who paid their money for the policies. I would not take their money away from them because the law of Texas says they should have it. In its revolt against the law of Texas, the majority has unwittingly fallen into egregious error, and a grave injustice has resulted. Perhaps the only remedy in the federal judicial system left to the defeated beneficiaries is to seek the elusive and expensive Writ of Certiorari. Perhaps they will do so.