United States Court of Appeals,

Fifth Circuit.

No. 92-8513.

RANGER INSURANCE COMPANY on Behalf of Steven BERNSTEIN, d/b/a Levelland Aviation, Plaintiff-Appellee,

v.

The ESTATE OF Max MIJNE, et al., Defendants,

Roland Potzner and Margot Potzner individually and as representatives of the estate of Marc Potzner, Defendants-Appellants.

May 21, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before JOHNSON, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Marc Potzner and Max Mijne, Jr. died when the small plane they were operating crashed. Marc Potzner had rented the plane from Levelland Aviation ("Levelland"). Levelland's insurance carrier, Ranger Insurance Company ("Ranger"), filed an interpleader action to determine which estate—Mijne or Potzner—was entitled to insurance proceeds. All parties filed motions for declaratory and summary judgment. Finding that the insurance policy excluded "renter pilots" such as Marc Potzner from its coverage, the court granted declaratory and summary judgment for Ranger, and denied Potzner's request for the same. Because the court erred in its interpretation of the policy's coverage provisions, we reverse the district court's decision, and render judgment for Potzner.

**I**

In July 1991, Marc Potzner rented a Piper Tomahawk Aircraft from Steven Bernstein, doing business as Levelland. Marc Potzner had the proper medical and pilot certificates to meet Levelland's requirements. The aircraft was a two-seater, capable of being piloted from either side of the cockpit. Ranger, a Texas company, provided insurance coverage for the plane.

Marc Potzner was accompanied in the aircraft by Max Mijne, Jr., also a licensed pilot. The plane crashed near Witharrall, Texas. Marc Potzner and Max Mijne, Jr., both foreign citizens, were

killed. It is uncertain which of the two men was piloting the plane when it crashed.

Ranger and the estates of Potzner and Mijne ("Potzner" and "Mijne") apparently entered into settlement negotiations some time after the accident.[1] Ranger seems to have offered $100,000 for the estates to divide. After much disagreement, Ranger interpleaded $100,000 into the district court's registry, and requested a declaratory judgment as to whom to pay the insurance proceeds.

Potzner filed a counterclaim and cross-claim for declaratory judgment, asserting that each passenger in the plane was entitled to $100,000 under the insurance policy. Shortly thereafter, Mijne filed a similar counterclaim and cross-claim. All parties subsequently filed motions for summary judgment.

The insurance policy between Ranger and Levelland contains the following relevant provisions:

Part One

General Provisions and Conditions

....

1. Words and Phrases

The following words and phrases have special meaning throughout the policy:

a. **You** and **your** mean the person or organization named in Item 1 of the Coverage Identification Page under the heading "Named Insured";[2]

....

c. **We, our** and **us** mean the insurance company named on the Coverage Identification Page;[3]

....

i. **Passenger** means any person who is in the aircraft or getting in or out of it;

j. **Bodily injury** means physical injury to a person, including sickness, disease or

---

[1]The facts concerning the settlement negotiations are taken from Ranger's brief on appeal, *see* Brief for Ranger at 4, and are not disputed by Potzner.

[2]Levelland is the named insured on Coverage Identification Page. *See* Record on Appeal, vol. 1, at 33.

[3]Ranger is the named insurance company on the Coverage Identification Page. *See id.*

death;

....

m. **Occurrence** means a sudden event or repeated exposure to conditions, involving the **aircraft** during the policy period, neither expected nor intended by **you,** that causes **bodily injury** or **property damage** to others during the policy period. All bodily injury or property damage resulting from the same general conditions will be considered to be caused by one occurrence;

....

o. **Renter pilot** means any pilot meeting the requirements of Item 9 of **your** Coverage Identification Page who is renting one of **your aircraft** from **you;**[4]

\* \* \* \* \* \*

Part Three

Liability to Others

....

1. What **We** Cover

We will pay damages **you,** and **anyone we** protect, are legally required to pay for **bodily injury** or **property damage** caused by an **occurrence** during the policy period.

e. Coverage DL covers **bodily injury** to passengers and others and property damage in a combined limit of liability for each occurrence which includes a lower limit for each passenger.[5]

The most **we** will pay for bodily injury to each **passenger** is shown in Item 6DL opposite "each person." The most we will pay for all **bodily injury** and **property damage** is shown in Item 6DL opposite "each occurrence."[6]

2. Who Is Protected

Except for those listed below, **your bodily injury** and **property damage** liability coverage protects **you** and any of **your** employees while in the scope of his or her employment whom **you** permit to fly **your aircraft** while it is operated by **you** or **your** employee. **You** and such employee, person or organization are protected separately, but the limits of liability shown in Item 6 of the Coverage Identification Page do not increase regardless of the number

---

[4]Those requirements are possession of a "proper medical certificate" and "pilot certificate with necessary ratings as required by the FAA for each flight." *Id.* (Item 9 of Coverage Identification Page).

[5]Although several kinds of coverage were available, Levelland only paid premiums on coverage DL. *See id.* (Item 7 of Coverage Identification Page).

[6]The limit for "each person" is $100,000.00, while the limit for "each occurrence" is $300,000.00. *See id.* (Item 6DL of Coverage Identification Page).

protected.

3. Who Is Not Protected

**Your bodily injury** and **property damage** coverage does not protect:

....

d. Renter Pilots

Any **renter pilot.**

4. What Is Not Covered

**We** do not cover any:

a. Pilots and Use

**Bodily injury** or **property damage** unless the requirements of the Coverage Identification Page regarding Pilots (Item 9) and Use (Item 10) are met;[7]

Record on Appeal, vol. 1, at 25-33 (emphasis in original).

The district court found no ambiguity in the insurance policy. The court interpreted the policy initially to cover both passenger and pilots because Part One, Sec. 1.i, explicitly defines a passenger as "any person who is in the aircraft." The court went on, however, to interpret Part Three, 3.d—stating that renter pilots are not "protected" under the policy—as excluding from coverage any bodily injury to renter pilots. Since Marc Potzner was indisputably a renter pilot, the court concluded that Marc Potzner's death was excluded from coverage. The court therefore granted Ranger's motion for declaratory and summary judgment. Since the court concluded that Marc Potzner's death was not covered under the policy, the court ordered that Ranger interplead only $100,000.00—the amount Mijne would be entitled to receive due to Max Mijne, Jr. being either a passenger or pilot. The court also denied Potzner's motion for summary judgment. Potzner filed a timely notice of appeal.[8]

---

[7]Item 10 of the Coverage Identification Page limits the use of the aircraft to Levelland's personal and business related purposes, *and* Levelland's "rental to anyone for their receiving instruction in the aircraft or [Levelland's] rental to anyone for their personal and business related purpose." *See* Record on Appeal, vol. 1, at 33.

[8]Potzner does not challenge, either in its brief on appeal or at oral argument, the district court's declaratory judgment regarding its order that Ranger "acted in conformity with the duty of good faith and fair dealing in accordance with Article 21.21 of the Texas Insurance Code." Record on Appeal, vol. 3, at 708 (Declaratory Judgment). We therefore need not address the issue.

## II

We review the district court's grant of a summary judgment motion de novo. *Davis v. Illinois Central R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991). Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The underlying facts of this action are not disputed. Therefore, we are left with determining whether the district court erred, as a matter of law, in interpreting the terms of the insurance policy. *See Guaranty Nat. Ins. Co. v. North River Ins. Co.,* 909 F.2d 133, 135 (5th Cir.1990) (holding that the "[i]nterpretation of an insurance policy is a question of law").

## III

Potzner argues that the district court erred in construing the terms of the insurance policy so as to exclude Marc Potzner's death from coverage. Applying Texas rules of construction,[9] we note that when the terms of an insurance policy are plain, definite, and unambiguous, a court may not vary these terms. *Royal Indemnity Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965); *see also Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987) (stating that "if the insurance contract is expressed in plain and unambiguous language, a court cannot resort to the various rules of construction [favoring the insured]"). An insurance policy is ambiguous only when it is "reasonably susceptible to more than one meaning ... but if only one reasonable meaning clearly emerges[,] it is not ambiguous." *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). When no ambiguity exists, a court must give the words used their plain meaning. *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984).

The policy expressly states that Ranger "will pay damages [Levelland], and anyone [Ranger] protect[s], are legally required to pay for bodily injury." Record on Appeal, vol. 1, at 30 (Part Three, Sec. 1). The policy further states that "Coverage DL covers bodily injury to passengers." *Id.* (Part Three, Sec. 1.e). The policy defines a passenger as being "any person who is in the aircraft." *Id.* at

[9]We apply Texas laws of construction to this diversity suit since Texas is the forum state. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.,* 783 F.2d 1234, 1238 (5th Cir.1986) (applying substantive law of forum state to diversity suit).

27 (Part One, 1.i). We find these terms unambiguous, and thus must give them their plain meaning. *See Puckett,* 678 S.W.2d at 938. The term "passenger" plainly includes pilots because a pilot is a "person who is in the aircraft." We therefore agree with the district court's initial conclusion that the policy covers the bodily injury to pilots—in this case, the deaths of both Marc Potzner and Max Mijne, Jr.[10]

We disagree, however, with the court's subsequent conclusion that bodily injury to "renter pilots" is excluded from the policy's coverage. In drawing this conclusion, the court relied upon Part Three, Sec. 3.i, which states that Levelland's "bodily injury ... coverage does not protect ... renter pilots." Record on Appeal, vol. 1, at 30 (Part Three, Sec. 3.d). That secti on, however, lists the persons protected, rather than the things covered under the policy, and thus is not relevant to determining whether Marc Potzner's death is covered under the policy. *See id.* (Part Three, Sec. 3 (entitled "*Who* Is Protected") and Part Three, Sec. 1 (entitled "*What* We Cover") (emphasis added)). We construe the term "protected" to refer to those insured under the policy—i.e., those persons who are legally required to pay damages which Ranger must cover. If, for example, Mijne sued Potzner as a result of the plane crash, Levelland's coverage would not protect Marc Potzner, as the renter pilot, from damages which his estate may be legally required to pay. This result, however, has no bearing on the fact that Marc Potzner's death is "covered" under the policy since the policy expressly covers "bodily injury to passengers." *See id.* (Part Three, Sec. 1.e).

The distinction between those "protected" and what is "covered" under the policy is evident when comparing Sec. 3 to Sec. 4.a of Part Three. In Part Three, Sec. 3, the policy states that Levelland's coverage does not protect renter pilots. *See* Record on Appeal, vol. 1, at 30. In Part Three, Sec. 4.a, the policy states that Ranger will cover bodily injuries as long as the requirements

---

[10]Ranger's reliance upon *Paul Revere Life Ins. Co. v. First Nat'l Bank in Dallas,* 359 F.2d 641 (5th Cir.1966) (en banc), is misplaced. In *Paul Revere,* we held that the common and popular meaning of the term "passenger" did not include pilots. *See id.,* 359 F.2d at 644. In doing so, we noted that "[t]here is no additional language in the contract ... which has logical bearing on the intended coverage." *Id.* Since Ranger's policy expressly defines "passenger" in such a way to include pilots, *Paul Revere* is not applicable to our facts. *See also Guardian Life Ins. Co. of America v. Scott,* 405 S.W.2d 64, 65 (Tex.1966) ("Terms used in an insurance contract are given their ordinary and generally accepted meaning *unless* the policy shows the words were meant to be used in a technical or different sense." (emphasis added)).

pertaining to (1) pilots[11] and (2) use of the aircraft are met. *See id.* Regarding the proper use of the aircraft, the policy further states, *inter alia,* that the aircraft must be used for "your *rental* to anyone for their receiving instruction ... or your *rental* to anyone for their personal and business related purposes," *see id.* at 33 (Item 10 of Coverage Identification Page), suggesting that injuries to pilots renting from Levelland would be covered under the policy. We interpret these sections, unambiguous in their terms, to mean that while the policy does not protect renter pilots from damage suits, it nevertheless covers the injuries suffered by renter pilots for which Levelland is obligated to pay. Consequently, we hold that Marc Potzner's death was covered under the terms of the policy.

## IV

For the foregoing reasons, we **REVERSE** the district court's grant of declaratory and summary judgment for Ranger, and **RENDER** judgment for Potzner.

---

[11]*See* Record on Appeal, vol. 1, at 33 (Item 9 of Coverage Identification Page) (listing the "pilot requirements" as being the possession of a proper medical certificate and pilot certificate ratings as required by the FAA).