328 F.2d 483
 UNITED SERVICES LIFE INSURANCE COMPANY, Appellant,
v.
Joan Flores DELANEY, Appellee.
PAUL REVERE LIFE INSURANCE COMPANY, Appellant,
v.
FIRST NATIONAL BANK IN DALLAS, Administrator of the Estate of Loy Thomas Brown, Appellee.
 No. 19531.
 No. 19604.
 United States Court of Appeals Fifth Circuit.
 February 4, 1964.
 Certiorari Denied May 18, 1964.
 
 See 84 S.Ct. 1335.
 No. 19531:
 Bond Davis, San Antonio, Tex., for appellant.
 Horace P. Shelton, Jr., San Antonio, Tex., for appellee.
 No. 19604:
 Pinkney, Grissom, Jerry L. Buchmeyer, Dallas, Tex., Thompson, Knight, Wright & Simmons, Dallas, Tex., of counsel for appellant.
 Earl Luna, John W. Collins, Jr., Dallas, Tex., for appellee.
 Before TUTTLE, Chief Judge, and HUTCHESON, RIVES, CAMERON, JONES, BROWN, WISDOM, GEWIN, and BELL, Circuit Judges.
 RIVES, CAMERON, JONES, JOHN R. BROWN and GEWIN, Circuit Judges:
 
 
 1
 In the appeal of United Services Life Insurance Company v. Delaney, a panel of this Court, with one judge dissenting, rendered an opinion for the affirmance of a judgment of the district court holding the appellant liable on a policy of insurance on the life of Robert H. Delaney payable to the appellee, Joan Flores Delaney. Delaney v. United Services Life Insurance Co., D.C.W.D.Tex.1961, 201 F.Supp. 25; United Services Life Insurance Co. v. Delaney, 5th Cir. 1962, 308 F.2d 484. The insured was a lieutenant in the United States Army and met his death when an Army plane, of which he was the pilot and sole occupant, crashed. The insurer asserted a freedom from liability by reason of a policy provision[1] which limited its liability to premiums paid or the policy reserve if death resulted from aircraft travel except as a passenger on an aircraft owned and operated by the United States Government or as a passenger on a scheduled passenger air service. This Court, construing the insurance contract, held that under the governing law of Texas, the word "passenger" in the limiting clause of the policy had the same meaning as "occupant," and did not exclude the pilot. In reaching its decision, the Court felt it was impelled to the construction which it adopted by the pronouncements of the Texas Courts in Warren v. Continental Casualty Co., Tex.Civ.App.1952, 248 S.W.2d 315, and Continental Casualty Co. v. Warren, 1953, 152 Tex. 164, 254 S.W.2d 762.
 
 
 2
 The appeal of Paul Revere Life Insurance Company v. First National Bank is from a judgment against the insurer on policies of accident insurance issued to the appellee's decedent, Loy Thomas Brown. The language of the policy pertinent here excludes coverage for "death or disability resulting from flight in aircraft except as a passenger on a civilian plane." The insured was killed while piloting, operating and in control of a private plane which crashed. The insurer asserted the exclusion clauses as a defense to an action on the policies. The district court, applying what it believed to be the law of Texas, and relying upon the Warren case, supra, as the source of the applicable law, rendered a summary judgment against the insurer, and in so doing held that the insured, at the time of his death, was a passenger on a civilian plane. A reconsideration by this Court of the meaning, effect and applicability of the Warren cases resulted in a grave doubt as to whether its rationale had been correctly determined in the United Services case. The Paul Revere case was submitted to the Court en banc. To avoid a conflict in our decisions the United Services case, then pending upon a motion for rehearing, was also referred to the Court en banc.
 
 
 3
 The two appeals are to be decided by the law of Texas, by which the insurance contracts are to be construed and from which the meaning of the contracts is to be determined. The guidance of the dim light of the Texas decisions leaves the meaning of the questioned clauses obscure. Without further enlightenment any judgment we might pronounce would be "a forecast rather than a determination." Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 499, 61 S.Ct. 643, 644, 645, 85 L.Ed. 971. The Supreme Court has "increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law." Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058, reh. den. 360 U.S. 940, 79 S.Ct. 1442, 3 L.Ed.2d 1552. It is appropriate that this Court stay its hand until the courts of the State of Texas shall have declared the law of the State of Texas which is applicable to and controlling in the disposition of these appeals. Each of the appellants can, and should, promptly initiate a proceeding in a Texas court seeking a declaratory judgment for the determining of the meaning of the pertinent clauses of the respective insurance contracts, with a review of such judgment by a court of last resort of the State of Texas.
 
 
 4
 An order will be entered in each of the appeals staying further proceedings in this Court until the courts of Texas shall have been afforded an opportunity to determine the issues to be submitted. This Court will retain jurisdiction for the purpose of taking such further action as may be required.
 
 
 
 Notes:
 
 
 [1]
 "If this policy shall become a claim of death of the insured due to any service, training, travel, flight, ascent or descent in, on, or from any species of aircraft at any time, except death resulting from travel as a passenger on an aircraft owned and operated by the United States Government or as a passenger on a scheduled passenger air service regularly offered between specified airports, the liability of the company under this policy shall be limited to the premiums paid hereunder or to the then net reserve at time of death, if greater; any provision in this policy to the contrary notwithstanding. * * *"
 
 
 
 5
 TUTTLE, Chief Judge, and HUTCHESON, WISDOM and BELL, Circuit Judges (dissenting).
 
 
 6
 We respectfully dissent. The mandate from Congress that we decide diversity cases, Title 28 U S.C.A. § 1332; Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, makes plain our duty to decide these matters.
 
 
 7
 They are not the exceptional cases referred to in Meredith v. City of Winter Haven, supra, where a federal court may decline to act, nor do they fall in one of the classes of cases where the doctrine of abstention has been given application. Thompson v. Magnolia Petroleum Co., 1940, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876; Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; and Louisiana Power & Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058. And Texas, unlike Florida, has made no provision for the certification by federal courts of doubtful questions to its Supreme Court for resolution. Clay v. Sun Insurance Office, Ltd., 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on certification, 133 So.2d 735; Aldrich v. Aldrich, 375 U.S. 75, 84 S.Ct. 184, 11 L.Ed. 2d 141, and Green v. American Tobacco Company, 5 Cir., 1962, 304 F.2d 70, on certification, Fla., 154 So.2d 169. See generally 1 Barron & Holtzoff (Wright Ed.), § 64; Wright, Federal Courts (1963 Ed.), § 52; and 1 A Moore's Federal Practice, pp. 2101-2124 and 3331-3332.
 
 
 8
 Being of this view, we would proceed to disposition on the merits; hence, this dissent.
 
 JOHN R. BROWN, Circuit Judge (concurring):
 
 9
 I join in the Court's decision to abstain pending determination of the controlling question of state law by the Courts of Texas. Prompted in part by matters briefly stated but strongly stressed in the dissenting opinion, but also by the nature of our action in postponing decision of what appears on the surface to be a simple case of contract construction, I think it appropriate to make these additional comments.
 
 
 10
 Abstention in a diversity case is no more an abdication[1] of the constitutional-statutory duty to decide[2] than is abstention in the field of determination of federal questions[3] in which the Federal Courts have a "primacy." England v. Louisiana State Board of Medical Examiners, 1964, 84 S.Ct. 461.
 
 
 11
 Abstention is neither abandonment of duty, on the one hand, nor a problem of raw power, on the other. It is judge-fashioned and being such, the cloth should be cut to the pattern.
 
 
 12
 The doctrine is, of course, a means devised to ameliorate some of the problems inevitably growing out of our unique federalism. For federal question cases, unseemly or unnecessary collision with a state is to be avoided, or at least postponed until such time as it is inescapable. Although the adjustment between the National Courts and a State takes a different turn in diversity cases, the underlying problem is essentially the same. And the impact — on local litigants and jurisprudence — is equally, if not more, awesome. This concern is, for example, reflected by the "outcome determinative" test[4] likewise judge-fashioned to meet the needs of Erie, only few of which had emerged when Meredith (note 1, supra) was announced in 1943. This approach recognizes that it is basically unfair for decision to turn on irrelevant accidents such as state citizenship, residence, geography, or the case being filed in one courthouse, rather than in the one a block down the street.
 
 
 13
 If in like cases diverse results are unfair when precipitated by quasi procedural rules, such as service of process, statute of limitations, etc., how much more unfair is it when the diverse result flows from diverse holdings on substantive law. This is a factor of growing importance as our own recent experience graphically demonstrates. Though our decisions survive the discretionary review of certiorari, most of the time because they are really not "certworthy," Harlan, J. in Tipton v. Socony Mobil Oil Co., 1963, 375 U.S. 34, 84 S.Ct. 1, 11 L. Ed.2d 4 (dissenting opinion), many of them do not fare so well when they are tested in the place that really counts — the highest, or first-writing court, of the State concerned. See Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267. Within the very recent past, both Texas[5] and Alabama[6] have overruled decisions of this Court, and the score in Florida cases is little short of staggering. In similar, but subsequent, cases, the Florida Courts have expressly repudiated our holdings in a number of cases.[7] And now that we have this remarkable facility of certification, we have not yet "guessed right" on a single case.[8] And within the month we have had to reach back over 2 years to grant a belated second petition for rehearing to completely undo our decision in Maryland Casualty Co. v. Hallatt, 5 Cir., 1961, 295 F.2d 64, because of an intervening, authoritative express disapproval of it by the Florida Courts[9] notwithstanding the fact that on remand a second trial had been had which resulted in victory for the insurance company. He who had lost now won, and he who had won now lost. Maryland Casualty Co. v. Hallatt, 5 Cir., 1964, 326 F.2d 275.
 
 
 14
 Of course no one in his right mind is unrealistic enough to suppose that the law is always a perfect symmetry, never involves contradictions, always avoids conflicts. But these cases illustrate what is happening nearly every day, even though the rejection of Erie-federally declared state law may not be quite so spectacular as it has been in these specific cases.
 
 
 15
 In many ways the desirability of "abstaining" in diversity cases is more pressing than in federal question cases. In a federal question case — barring the now unlikely possibility, after England v. Louisiana State Board of Medical Examiners, 1964, 84 S.Ct. 461, that anyone will ever voluntarily commit determination of the federal question to the state court — the case ultimately comes back to the federal court for decision on the federal question. To test the correctness of the decision on the federal question, there is an appeal as a matter of right to the Court of Appeals for a single Judge case[10] and to the Supreme Court in three-judge cases.[11] If in error, the wrong can be corrected as to those parties and in that case. But not so for diversity. As a Court of Appeals, our decision in a diversity case is for all practical purposes final and irretrievable as to those parties and that cause of action. The Supreme Court, within its physical capacity, cannot entertain any such cases as to the merits of the state question. When such cases get there, it is almost always because of some federally assured procedural right, such as the Seventh Amendment, Federal Rules of Civil Procedure on discovery, or the like. The law announced by us becomes the law of the Medes and Persians which altereth not until the state authoritatively declares the law to be otherwise. When the subsequent state declaration is made, our former opinion evaporates as though it never existed. "The Moving Finger writes, and having writ, moves on. But it may be that having written, what we write is soon erased." Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267. But in the meantime, the litigants in the federal diversity case have suffered a loss of rights, or have been subject to burdens which the local law does not support. Thus it is that the only person who is hurt is the one who has no effective recourse to correct the error. Cf. Tipton v. Socony Mobil Oil Co., 5 Cir., 1963, 315 F.2d 660, 662, 667, 1963 AMC 1800, 1803, 1809 (dissenting opinion), reversed per curiam, 1963, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4.
 
 
 16
 All of these consequences can be avoided in a diversity case by devising a suitable method by which to obtain an authoritative state ruling on the controlling question of state law. That leaves, of course, the problem of just when resort should be had to the method devised — when, in short, to "abstain" either on the trial or appellate level. But the fact that such a subsidiary question is not always an easy one should not (a) detract from proper use of the method devised, or (b) make superfluous the task of determining whether the case is a proper one for its use. That is the essence of adjudication. That is why judicial travail is worthwhile.
 
 
 17
 Obviously the problem of abstention is not one of power. This much is manifest from its extensive use in federal question cases as to which the Federal Court has the last and only say (short, of course, of an England abandonment). Since it is not a question of power, the exercise of abstention cannot depend on the existence of a state procedure or a precise, unusually effective state remedy. If one is not readily available, then one must either be devised within permissible limits, or the parties must be left to their own resourceful imaginative devices.[12] The fact that Florida has provided an unusually effective method in its certification procedure and that in Clay, Aldrich and Dresner,[13] the Supreme Court, as we have in Green[14] has directed that the question be certified does not establish the proposition that it is the Florida State procedure which invests the Federal Court with the power to certify. It would be strange indeed if the matter of power of a constitutionally created Article III Court could depend on the presence or absence of state legislation or state procedure. If the Federal Court can "abstain," that is, defer decision by sending parties to a particular state procedure for authoritative decision by the state tribunals of issues committed finally to the state, it may do so only because that course is appropriate to the exercise of federal judicial authority, not because a state has supplied a handy scheme or tool.
 
 
 18
 One other aspect bears directly on the problem of when, or under what circumstance, a suitable state procedure is to be employed. Again, it is equally obvious that the matter of power does not turn on the complexity or simplicity of the state issue. The exercise of the power may well suggest evaluation in such terms, lest each and every diversity case on its initial filing be immediately turned out to graze in the state pasture. But in that process, whether the state issue is "difficult" or "complicated" or "simple" cannot be determined by any superficial inquiry or surface appearance. Thus it is here. We have what appears to be two Texas insurance contracts, each with its own exculpatory clause, being measured perhaps against what the Texas Courts have said, or said they have said, concerning comparable contracts.[15] But a closer study shows that our real difficulty is not in the work of legal journeymen divining the "intention" of the parties in a run-of-the-mill contract interpretation case. Rather, it centers around the Texas law governing the interpretation and construction of insurance contracts. Nowhere is this more manifest than in our inability to decide just what the Texas law is on either one of these aspects. It was complicated not only by the necessity of construing its meaning in one case, but in determining in what way or to what extent such decision would, or would not, alter or control the other case.[16] The decision of one case might be fairly simple, but the decision of two or more cases gives rise to extremely difficult problems of stare decisis, a problem which we have recognized to be so important to a multi-judge court sitting in panels of three.[17]
 
 
 19
 When nine Judges, five of whom heard extended arguments in each of the cases on submission to separate panels, followed by extended briefs on submission en banc, state they cannot agree on what the controlling law is, I do not think the case can any longer be described as "easy," or "simple."
 
 
 20
 What should we do under such circumstance? Should we make a guess? Should we make a guess in one of the two cases, leaving the other to the chance of possible distinction to save it from stare decisis? And would not this add to the general confusion if the panel in the other or the subsequent case declines to be bound by an en banc decision brought about on the Court's own motion from the declared apprehension that an earlier decision was at least doubtful enough as to warrant a review by the full Court?[18] If we "guess it off" for Texas, what happens to equality of treatment within the six States of this Circuit when, for like questions, either initially or under Supreme Court mandate, we certify to the Florida Supreme Court?
 
 
 21
 It is judicial statesmanship of the highest and proper order for us to conclude that these questions, so very vital and important to these contesting litigants, should be decided by courts who either know the answer or who can write it if it has not yet been announced. Texas has a judicial system which will permit adjudication with dispatch and speed. And its excellent Judges and Courts have a full arsenal of procedural devices which will enable the parties to have a prompt and completely sufficient determination.[19]
 
 
 
 Notes:
 
 
 [1]
 The dissent naturally stresses Meredith v. City of Winterhaven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9
 
 
 [2]
 U.S.Const. art. III; 28 U.S.C.A. § 1332
 
 
 [3]
 28 U.S.C.A. §§ 1331, 1336, 1441(b), 1343; 42 U.S.C.A. §§ 1981-1986
 
 
 [4]
 Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Byrd v. Blue Ridge Elec. Coop., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953; and see Monarch Ins. Co. of Ohio v. Spach, 5 Cir., 1960, 281 F.2d 401, for an extensive discussion of the whole problem area. See also Smith, Blue Ridge and Beyond: A Byrd's-Eye View of Federalism in Diversity Litigation, 36 Tul.L.Rev. 443 (1962)
 
 
 [5]
 Truck Ins. Exchange v. Seelbach, 1960, 161 Tex. 250, 339 S.W.2d 521, expressly rejecting National Surety Corp. v. Bellah, 5 Cir., 1957, 245 F.2d 936
 
 
 [6]
 The Supreme Court of Alabama in New York Times Co. v. Sullivan, 1962, 273 Ala. 656, 144 So.2d 25, 51, categorically rejected the views previously expressed by us in New York Times Co. v. Conner, 5 Cir., 1961, 291 F.2d 492, on the so-called single publication rule. Thereafter we bowed the knee, 5 Cir., 1962, 310 F.2d 133. Following grant of certiorari, 371 U.S. 946, 83 S.Ct. 510, 9 L.Ed.2d 496, this case was argued January 14, 1964
 
 
 [7]
 See, e. g., Food Fair Stores, Inc. v. Trussell, Fla.Sup.Ct., 1961, 131 So.2d 730, expressly disapproving Pogue v. Great Atlantic & Pacific Tea Co., 5 Cir., 1957, 242 F.2d 575
 
 
 [8]
 After remand by the Supreme Court directing certification, Clay v. Sun Ins. Office, 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, the Supreme Court of Florida, 1961, 133 So.2d 735, disagreed with our earlier expression of local law in our initial opinion, 5 Cir., 1959, 265 F.2d 522. This was followed by our second opinion, 5 Cir., 1963, 319 F.2d 505, now pending after certiorari granted, 1963, 375 U.S. 929, 84 S.Ct. 333, 11 L.Ed.2d 262
 Most spectacular is, of course, the cigarette warranty case of Green v. American Tobacco Co., 5 Cir., 1962, 304 F.2d 70, by a divided Court. The Supreme Court of Florida thereafter essentially sustained the dissenting opinion of Judge Cameron, 1963, 154 So.2d 169. As in Clay, we have perhaps added some more complications to the case on resubmission following the answers from the Florida Supreme Court. 5 Cir., 1963, 325 F.2d 673.
 
 
 [9]
 Barnes v. Threshermen and Farmers Mutual Casualty Co., Fla.Ct.App., 1963, 146 So.2d 119, cert. denied, Fla., 153 So. So.2d 305. As in Green, the dissent (Rives, J.) was the law
 
 
 [10]
 28 U.S.C.A. § 1291; F.R.Civ.P. 73
 
 
 [11]
 28 U.S.C.A. § 1253. This is so even though the Supreme Court administratively handles much of this by motion to dismiss or affirm, see Supreme Court Rules 16(1) (a) (b) and 16(1) (c)
 
 
 [12]
 As Justice Douglas points out in note 8 of his concurrence in England, a way was found in City of Meridian v. Southern Bell T. & T. Co., 1959, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562, despite the absence of a declaratory judgment procedure in Mississippi. The parties simply switched roles. He who was pursued became the pursuer. Southern Bell T. & T. Co. v. Meridian, 1961, 241 Miss. 678, 131 So.2d 666. Even the National Sovereign may be sent to the State Courts to determine state questions such as ownership of minerals. Leiter Minerals, Inc. v. United States, 1957, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed. 2d 267, modifying and affirming, 5 Cir., 1955, 224 F.2d 381, affirming E.D.La., 1954, 127 F.Supp. 439. See the case on remand, Leiter Minerals, Inc. v. California Co., La.Ct.App., 1961, 126 So.2d 76, reversed, 241 La. 915, 132 So.2d 845
 
 
 [13]
 Clay v. Sun Insurance Office, 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170; Aldrich v. Aldrich, 1963, 375 U.S. 249, 84 S.Ct. 305, 11 L.Ed.2d 304, certifying questions in conformity with prior Memorandum Decision, 375 U.S. 75, 84 S.Ct. 184, 11 L.Ed.2d 141; Dresner v. Tallahassee, 1963, 375 U.S. 136, 84 S.Ct. 235, 11 L.Ed.2d 208
 
 
 [14]
 Green v. American Tobacco Co., 5 Cir., 1962, 304 F.2d 70
 At this very moment, in the pending petition for rehearing, this Court on its own motion has directed the parties to brief the question of desirability of certification and the form of proposed questions for certification to the Florida Supreme Court in Vandercook and Son, Inc. v. Thorpe, 5 Cir., 1963, 322 F.2d 638.
 
 
 [15]
 The eyes of all are focused on Warren v. Continental Casualty Co., Tex.Civ. App., 1952, 248 S.W.2d 315, and Continental Casualty Co. v. Warren, Sup.Ct. Tex., 1953, 152 Tex. 164, 254 S.W.2d 762. In the course of our effort to resolve the substantive question, we learned that the Warren decision had been examined by the Texas Court at least seven times. Two of these cases were urged as particularly significant. Great American Indemnity Co. v. Myrle Pepper et al., Tex. Civ.App., 1960, 334 S.W.2d 333; Clark v. Lone Star Life Insurance Co., Tex. Civ.App., 1961, 347 S.W.2d 290
 
 
 [16]
 The two instant cases are not the only ones. Pending and argued before another panel of this Court is another Texas "pilot-passenger" insurance case. Decision has been deferred pending our efforts to determine and pronounce controlling Texas legal principles
 
 
 [17]
 We recognized this as a substantial problem in the administration of justice in Lincoln Nat'l Life Ins. Co. v. Roosth, 5 Cir., en banc, 1962, 306 F.2d 110
 
 
 [18]
 The Clerk's letter-order February 14, 1963, to counsel in the two instant cases stated:
 "By a majority vote of the active members of the Court, the Court will consider the appeal in the above first entitled case [Revere, No. 19604] en banc. This results from a determination on the part of the Court to give further consideration to the opinion heretofore filed in the second above entitled case [Delaney, No. 19531], as to which a motion for rehearing has been denied.
 "The case will be submitted without argument after all parties at interest have had further opportunity to file briefs in the matter. In view of the fact that the mandate of this Court has not gone down in the United Services Life Insurance Company case, counsel in that case are also invited to file a memorandum with the Court dealing with the question as to what procedure should be followed by the Court to make certain that it is not finally disposed of until after the Court has made its decision in the Paul Revere Life Insurance Company case. The appellants in both of these cases may file such additional briefs as they are advised on or before March 1, 1963, and respondents in both cases may then file such additional briefs as they may be advised on or before the 1st day of April."
 
 
 [19]
 Texas has long had express provision for declaratory judgments, Tex.Civ.Stat. Ann. art. 2524-1. As the problem is likely one of determination without evidence, or if evidence is needed, it, too, will turn out to be substantially uncontradicted, decision will undoubtedly be expedited through the use of summary judgment, now frequently employed by Texas Courts. Tex.R.Civ.P. 166-A; Gaines v. Hamman, 1962, 163 Tex. 618, 358 S.W.2d 557; Hester v. Weaver, Tex. Civ.App., 1952, 252 S.W.2d 214, error ref'd