A. T. BARRETT, Jr., Plaintiff-Appellant,

v.

ATLANTIC RICHFIELD COMPANY, Defendant-Appellee.

No. 29795.

United States Court of Appeals, Fifth Circuit.

May 17, 1971.

S. Norman Sorrell, A. J. Mandell, Mandell & Wright, Houston, Tex., for appellant.

Rush Moody, Jr., Midland, Tex., Jerry Sadler, Austin, Tex., Albert Schiemenz, Midland, Tex., The Duval Corporation, Houston, Tex., Harrell Feldt, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, Tex., for appellee.

Before WISDOM, THORNBERRY, and DYER, Circuit Judges.

WISDOM, Circuit Judge:

The appellant, A. T. Barrett, Jr., asks this Court to reverse an order of the district court dismissing his complaint and to direct the court to convene a three-judge court to hear his constitutional attack upon the system devised by the State of Texas for awarding development rights to the sulphur underlying its public school lands. We have concluded that the district court should not have reached a decision on the merits, but rather should have abstained. Therefore we reverse the judgment of the district court and remand the case with instructions to dismiss Barrett's complaint without prejudice.

## I.

Barrett is the oil and gas lessee of two sections of public school lands in Culberson County, Texas. Years ago the State of Texas, original owner of the land in question, sold the surface with a reservation of the minerals in the State. In February 1961 the surface owner, acting as agent for the State, in accordance with Vernon's Ann.Tex.Rev.Civ. Stat.Ann. arts. 5367–79, conveyed an oil and gas lease to Barrett. Barrett went on the land, drilled wells, and discovered oil, but as of May 1969 he had not yet begun full production.

Atlantic Richfield is the successor by merger to Sinclair Oil & Gas Company. In 1967 the State issued a grant to Sinclair to develop the sulphur underlying the same two sections of land in Culberson County included in Barrett's oil and gas lease. The award to Sinclair was

made under Tex.Rev.Civ.Stat.Ann. arts. 5388–5403 and the mandate of the Texas Supreme Court in Duval Corp. v. Sadler, 407 S.W.2d 493 (Tex.1966). In May 1969 Atlantic Richfield went on the land and drilled a sulphur test well.

Barrett first became aware of Atlantic Richfield's sulphur operations in June 1969. An inspection of the land revealed that Atlantic Richfield had located its test well almost exactly at a site upon which Barrett had planned to drill an oil well. Moreover, the sulphur well directly offset two of Barrett's existing oil wells. Upon discovering signs that the sulphur well was also producing oil, Barrett attempted to obtain from Atlantic Richfield data from which he could determine whether and to what extent his oil in place had been produced, damaged, or rendered unrecoverable. Atlantic Richfield declined to supply him with that information. Consequently Barrett filed this lawsuit.[1]

Barrett's original complaint sought to have the district court nullify Atlantic Richfield's sulphur award and enjoin its drilling operations on the theory that the statutes under which Atlantic Richfield received its award, Tex.Rev.Civ. Stat.Ann. arts. 5388–5403, were unconstitutional. Barrett alleged two grounds in support of his claim of unconstitutionality: (1) that the State's award of sulphur rights, which enabled Atlantic Richfield to go on the land and drill its wells, effectively deprives Barrett of his property rights without due process of law in violation of the Fourteenth Amendment, and (2) that the State's award and Atlantic Richfield's actions pursuant to that award constitute an impairment of the State's contractual obli-

gations to Barrett, which is prohibited by Article I, Section 10 of the United States Constitution. Seeking to restrain the operation of these statutes, Barrett moved that the district court convene a three-judge court according to 28 U.S.C. §§ 2281 and 2284 to hear the case. He also filed a motion for leave to amend his original complaint to allege diversity jurisdiction and a cause of action for damages based on Atlantic Richfield's drilling operations. In response to Barrett's original complaint Atlantic Richfield filed motions to dismiss for failure to state a claim upon which relief could be granted and for lack of jurisdiction over the subject matter.

The district court granted Atlantic Richfield's motions to dismiss. In its written order of dismissal the court concluded that Barrett's original complaint presented no substantial federal or constitutional question and that Barrett had state administrative remedies available to him that he had not exhausted. The court therefore denied Barrett's motions for temporary injunctive relief and for convening a three-judge court. The court also denied Barrett's motion for leave to amend his original complaint to allege diversity jurisdiction.

## II.

■ We have concluded that rather than entering a judgment on the merits, the district court should have invoked the doctrine of abstention and dismissed the complaint without prejudice.

In recent cases the Supreme Court has restated, without material change, its abstention doctrine as set forth in *Pullman.*[2]

---

1. Barrett denominated his lawsuit a class action the Petitioner being the representative of a class, to obtain permanent injunctive relief for all persons situated similarly to the Petitioner, they being persons who have property rights as Lessees in and to oil and gas in free Public School Lands of Texas, which premises were, after being leased for oil and gas, made also subject to mineral awards for sulphur exploration and production.

The district court did not pass upon the question whether Barrett is entitled under Rule 23(a), F.R.Civ.P., to maintain his action as a class action.

2. The abstention doctrine derives of course from Justice Frankfurter's opinion in Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. In that case the plaintiffs sought to have a three-judge district court enjoin an order of the Railroad Commis-

Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.

Harman v. Forssenius, 1965, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50, 55. Because, however, abstention involves a certain duplication of effort and expense and attendant delay, the Court has said that the doctrine should be applied "only where 'the issue of state law is uncertain.'" Reetz v. Bozanich, 1970, 397 U.S. 82, 86, 90 S.Ct. 788, 790, 25 L. Ed.2d 68, 72, quoting from Harman v. Forssenius, *supra; see also* Wisconsin v. Constantineau, 1971, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515, 521. The reasoning behind that rule is clear: if the issue of state law is settled and affords relief to the plaintiff, the federal court itself can apply that law to dispose of the case. Similarly, if the state law issue is settled but affords no relief to the plaintiff, the federal court has no choice but to decide the constitutional questions. In either case abstention would be useless.

This is a particularly appropriate case for an application of the *Pullman* doctrine for two reasons. First, the resolution of Barrett's federal constitutional questions is wholly dependent upon, and may be materially altered by, the determination of certain unsettled issues of state law. *Compare* Harman v. Forssenius, *supra.* The crux of this case concerns the relative rights of the lessee of the oil and gas and the lessee of the sulphur underlying the same tract when, because of unusual geophysical facts and modern extraction methods, to recover one of the minerals it is necessary also to take or destroy or render unrecoverable the other. Barrett contends that as the lessee "first in time of grant" he is entitled, in these circumstances, to keep Atlantic Richfield off the land entirely or at least to recover damages for the harm that its drilling operations have done to his oil in place. Atlantic Richfield, on the other hand, contends that by virtue of its award from the State it is entitled to go on the land and develop its sulphur rights, to use as much of the surface and other estates as is necessary to the full enjoyment of its rights, and is liable to Barrett only if it does its work negligently and thereby damages his oil in place. Atlantic Richfield concedes of course to Barrett the similar right to take all reasonable steps to develop concurrently his oil and gas, but does not concede to him any superior development rights.

Barrett contends that he is entitled to legal and equitable relief because the combined action of the State and Atlantic Richfield constitutes an unconstitutional impairment of the obligation of contracts and deprives him of his property without due process of law. Ac-

sion on the ground that it deprived them of rights under the Fourteenth Amendment. They also attacked the order as one the Railroad Commission was without authority under Texas law to make. The three-judge court enjoined enforcement of the order, and a unanimous Supreme Court reversed. The Court ordered the district court to abstain from deciding the case but to retain jurisdiction until the plaintiffs had had an opportunity to obtain from the state courts a decision on the state issues involved. *See* C. Wright, Federal Courts § 52, at 196–197 (2d ed. 1970).

Justice Frankfurter based the Court's holding upon his desire to avoid both "the friction of a premature constitutional adjudication" and "the waste of a tentative decision" by the federal courts on an issue of state law that could be supplanted tomorrow by an authoritative state court decision. 312 U.S. at 500, 61 S.Ct. at 645, 85 L.Ed. at 974. *See* Note, Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era, 80 Harv.L.Rev. 604, 605 (1967).

cepting his factual allegations as true, Barrett's pleadings may well present *substantial questions of federal constitutional law. Whether they do, however depends entirely upon state law*—upon a construction of the Texas oil and gas leasing statutes, the sulphur leasing statutes, and the property rights granted under those respective statutes. What the proper construction of those statutes should be is, moreover, unclear to us now. Barrett readily admits that no Texas court has passed upon the question of the "correlative rights" in the same tract of an oil and gas lessee and a sulphur lessee. Certainly the prospect of a conflict between oil and gas lessees and sulphur lessees was not before the Texas Supreme Court in Duval Corp. v. Sadler, 407 S.W.2d 493 (Tex.1966). Indeed, it seems likely that the Texas legislature did not even foresee the conflict when it created the separate statutory schemes for the acquisition of the prospecting and development rights to the oil and gas and the sulphur underlying the public school lands. In short, we cannot even begin to adjudge Barrett's constitutional claims without an authoritative construction of the parties' respective property rights under Texas law. And, as the Supreme Court has said, the "[p]roper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions." City of Meridian v. Southern Bell Tel. & Tel. Co., 1959, 358 U.S. 639, 640, 79 S.Ct. 455, 456, 3 L.Ed.2d 562, 563.

Second, in construing the relative property rights under state law of Barrett and Atlantic Richfield, the Texas courts may well dispose of the case entirely and thus avoid altogether the necessity of a constitutional adjudication. For example, if the Texas courts rule that Barrett in fact has the property rights he now claims and that those rights have been damaged, they may grant him legal or equitable relief under state law. In that event the litigation would cease. If they decide that Barrett's property rights are subject to the correlative rights of the State and Atlantic Richfield and that he is therefore not entitled to relief under state law, that too might end the litigation. Since Barrett's constitutional arguments are wholly dependent upon the determination under state law of the nature and extent of his property rights and since the state court would have ruled that Barrett had not in the first place the rights he claims are being taken without due process, his constitutional arguments might be frivolous. Indeed, in only one case would an adjudication of Barrett's constitutional questions be necessary, and that is if the Texas courts conclude that even though Barrett possesses the property rights he now claims and Atlantic Richfield has in fact injured those rights, Atlantic Richfield is nevertheless relieved from liability because of its authorization from the State. Therefore since in this case "the state court's interpretation of the [relevant statutes] may obviate any need to consider [their] validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily." City of Meridian v. Southern Bell Tel. & Tel. Co., *supra. See also* Askew v. Hargrave, 1971, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196, 198–199.

In addition to the foregoing analysis of the *Pullman* doctrine, two other factors strengthen our resolve to order abstention in this case. First, in a series of cases beginning with Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, the Supreme Court has mandated abstention in order to avoid needless conflict with a state's administration of its domestic policy. *See* C. Wright, Federal Courts § 52, at 199–200 (2d ed. 1970). In *Burford* itself the Court refused to hear an attack on an order of the Texas Railroad Commission on the ground that "[t]hese questions of regulation of the industry by the State administrative agency * * * so

clearly involves basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them." 319 U.S. at 332, 63 S.Ct. at 1106, 87 L.Ed. at 1434. For similar reasons the Court in Alabama Public Service Commission v. Southern Railway Company, 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L. Ed. 1002, reversed an order of the district court enjoining the enforcement of the state laws relating to the regulation of intrastate railroad service. Finally, to avoid "the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities," the Court in Louisiana Power & Light Co. v. Thibodeaux, 1959, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058, upheld an order of the district court staying proceedings in that court pending a ruling by the state courts on an unsettled question of eminent domain law.

Although orders of the Texas Railroad Commission and the General Land Office are only tangentially involved here, these principles are nevertheless important to this case. Barrett's original complaint directly attacks the constitutionality of the scheme devised by the State of Texas for promoting and regulating the development of the minerals underlying its public school lands. Atlantic Richfield responds that a decision upholding Barrett's position would effectively prohibit the State from fully developing the various minerals underlying its state lands and thus deny to the State's Public School Fund the income from such development. Barrett replies that he does not challenge the theory of concurrent development of minerals on state lands, but argues that if truly concurrent development is not possible, then one mineral interest must yield to the other or one lessee must compensate the other. As lessee "first in time of grant" he is thus entitled to prevail. These contentions quite obviously "involves basic problems of Texas policy." *See* Burford v. Sun Oil Co., *supra.* Indeed, for this Court to decide this case it is likely that we would have to choose between apparently inconsistent legislative policies. Because of the very real possibility of disruption by the federal courts of the State's long-standing mineral leasing programs, it is entirely proper that "equitable discretion * * * be exercised to give the Texas courts the first opportunity to consider" the allegations in Barrett's complaint. *See* Burford v. Sun Oil Co., *supra.*

Second, it is true that recent Supreme Court decisions have emphasized that abstention is proper "only in narrowly limited 'special circumstances.'" Reetz v. Bozanich, 1970, 397 U.S. 82, 86, 90 S. Ct. 788, 790, 25 L.Ed.2d 68, 72; Zwickler v. Koota, 1967, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444, 450. One of those "special circumstances" is of course the susceptibility of a state statute of a construction by the state courts that would avoid or modify the constitutional questions. Another is the possibility of unwarranted intrusion by the federal courts in the domestic policy of a state. But a third "special circumstance" might be the subject matter of the lawsuit itself. In Louisiana Power & Light Co. v. Thibodeaux, *supra,* Justice Frankfurter justified abstention also on the ground that eminent domain was a special proceeding, "a matter close to the political interests of a State." 360 U.S. at 29, 79 S.Ct. at 1073, 3 L.Ed. 2d at 1062. *See also* Hill v. Victoria Co. Drainage Dist. No. 3, 5 Cir. 1971, 441 F.2d 416 [No. 30,606, April 20, 1971]. In Reetz v. Bozanich, *supra,* Justice Douglas supported abstention by pointing out that the lawsuit there related to "fish resources, an asset unique in its abundance in Alaska" and "the management of which is a matter of great state concern." 397 U.S. at 87, 90 S.Ct. at 790, 25 L.E.2d at 72. Similarly, in Kaiser Steel Corp. v. W. S. Ranch Co., 1968, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835, the Court ordered a stay of federal proceedings, saying

The state law issue which is crucial in this case is one of vital concern in the arid State of New Mexico, where wa-

ter is one of the most valuable natural resources. The issue, moreover, is a truly novel one. The question will eventually have to be resolved by the New Mexico courts. * * *

*Id.* at 594, 88 S.Ct. at 1754, 20 L.Ed.2d at 837.

We need not elaborate on the importance of mineral production to the economy of the State of Texas. We only wish to point out that this case concerns much more than a simple question of a state's regulation of its vital assets—whether they be land, water, fish, or minerals. This case concerns actual state ownership of vast amounts of oil and sulphur and the respective schemes devised by the Texas legislature for promoting the development of those minerals for the benefit of the Public School Fund. A decision in this case—which is purportedly brought as a class action on behalf of all persons in Texas who own oil and gas leases covering public school lands that might also be available for the production of sulphur—would affect not only the parties themselves and the economy of the State generally but also the revenues upon which the State so heavily depends for the support of its public schools. For these reasons then a proper regard for the principles of federalism requires that we give the state courts the first opportunity to resolve the questions Barrett raises.

### III.

Our decision to order abstention, in the circumstances of this case, was not difficult; that course follows naturally and logically from a proper analysis of the Supreme Court's decisions on abstention. The more difficult question is what method of abstention will best accomplish our goal of a prompt determination by the Texas courts of the relative rights under state law of Barrett and Atlantic Richfield.

The Supreme Court has utilized two different procedures in abstention cases. In the ordinary *Pullman*-type case the district court is ordered to stay proceed-ings but to retain jurisdiction while the parties seek a determination of their state law issues in state court. *E. g.,* Reetz v. Bozanich, *supra;* City of Meridian v. Southern Bell Tel. & Tel. Co., *supra;* Railroad Commission of Texas v. Pullman Co., *supra.* When a party repairs to state courts, he may of course submit the whole case—state law and federal constitutional questions—to the state court. If he unreservedly chooses to do so, on accepted principles of res judicata he may not return to the federal district court to re-litigate his federal constitutional claims. England v. Louisiana State Board of Medical Examiners, 1964, 375 U.S. 411, 419, 84 S.Ct. 461, 11 L.Ed.2d 440, 447. The only federal review of the party's federal claims in that case is by way of appeal from the state supreme court to the Supreme Court. Because even direct appeal rather than certiorari may be a poor substitute for the initial federal district court determination, the Court in *England* held that a party need not litigate his federal claims in state court. *Id.* at 416–417, 84 S.Ct. 461, 11 L.Ed.2d at 445–446. Under the *England* procedure he must only inform the state courts what his federal claims are, so that the state statutes involved may be construed in the light of those claims. In this manner he may reserve his right to return to the federal district court, should the state court rule against him on the questions of state law, for disposition of his federal contentions. *Id.* at 419–422, 84 S.Ct. at 467–468, 11 L.Ed.2d at 447–449. *See* C. Wright, Federal Courts § 52, at 198–199 (2d ed. 1970); Comment, Recent Developments in the Doctrine of Abstention, 1965 Duke L.J. 102, 116–126.

In *Burford*—and other cases involving the possibility of unwarranted disruption by the federal courts of a state's domestic affairs—the Court directed the district court simply to dismiss the complaint. In those cases the plaintiff must then be satisfied with a state court determination of his federal claims with final review of the state court decision in the Supreme Court. *See* C. Wright,

Federal Courts § 52, at 200 (2d ed. 1970).

■ Were we starting with a clean slate, we would be inclined, because this is fundamentally a *Pullman*-type case, to order the district court to retain jurisdiction pending a state court determination of Barrett's property rights under state law.[3] Nevertheless, because of the strong *Burford* aspects of the case, dismissal could also be proper. In any event, we are not starting with a clean slate. A well-intentional but unfortunate decision of this Court has convinced us that in order for the parties to be able to obtain in Texas courts an adjudication of their relative property rights under state law, we must order the federal district court to dismiss the present action.

In United Services Life Insurance Co. v. Delaney, 5 Cir. 1964, 328 F.2d 483 (en banc), this Court was confronted with the question of the proper construction under Texas law of a term in two similar insurance contracts. The case involved no federal constitutional question. Finding the "meaning of the questioned clauses obscured," the Court stayed proceedings on appeal to await the result of a declaratory judgment action that the parties were directed to file in a Texas state court. *Id.* at 484–485. The Court retained jurisdiction of the suit, however, "for the purpose of taking such further action as may be required." *Id.* at 485.[4]

The parties filed a declaratory judgment action in a Texas court. The trial court dismissed the suit for want of ju-

3. It is not at all clear that in a *Pullman* case the district court *must* retain jurisdiction of the case pending a state court determination of the state law issues. In at least one *Pullman* case, Stainback v. Mo Hock Ke Lok Po, 1949, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741, the Supreme Court has ordered that the action be dismissed rather than stayed. But in Doud v. Hodge, 1956, 350 U.S. 485, 76 S.Ct. 491, 100 L.Ed. 577, the Court held that it was error for the district court to dismiss a *Pullman* case for lack of jurisdiction. The Court did not say, however, that it would have been error for the court to dismiss without prejudice in the exercise of its equitable jurisdiction; in fact, the Court specifically stated that it was not deciding "what procedures the District Court should follow on remand." *Id.* at 487, 76 S.Ct. at 493, 100 L.Ed. at 579.

More recently, the Court in Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444, has described the retention of jurisdiction as merely the "better practice, in a case raising a federal constitutional or statutory claim." *Id.* at 244 n. 4, 88 S.Ct. at 393, 19 L.Ed. 2d at 448 n. 4.

Finally, Judge Dyer, for our Court, has recently argued persuasively that dismissal without prejudice is as appropriate in a *Pullman* case as a stay of proceedings. *See* Hill v. Victoria Co. Drainage Dist. No. 3, 5 Cir. 1971, 441 F.2d 416 [No. 30,606, April 20, 1971]. *See also* Hill v. City of El Paso, Texas, 5 Cir. 1971, 437 F.2d 352, 357.

4. Four members of the then nine-member Court dissented on the ground that the Supreme Court's decision in Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, precluded abstention in ordinary diversity cases except in unusual circumstances. The dissenters thought *Delaney* clearly not to be one of those "exceptional cases." 328 F. 2d at 485.

The Court's decision to abstain in *Delaney* has, perhaps not surprisingly, evoked a considerable amount of scholarly comment—most of it critical. *See, e. g.,* Agata, *Delaney*, Diversity, and Delay: Abstention or Abdication? 4 Hou.L.Rev. 422 (1966); Gowen & Izlar, Federal Court Abstention in Diversity of Citizenship Litigation, 43 Texas L.Rev. 194, 211–214 (1964); Comment, Recent Developments in the Doctrine of Abstention, 1965 Duke L.J. 102, 107–112; Comment, Abstention under *Delaney*: A Current Appraisal, 49 Texas L.Rev. 247 (1971); Note, Abstention and Certification in Diversity Suits: "Perfection of Means and Confusion, of Goals," 73 Yale L.J. 850 (1964).

We might also note that in addition to his concurring opinion in *Delaney*, 328 F.2d at 485–489, Judge Brown has authored a spirited defense of the *Delaney* approach to difficult and unsettled questions of state law. *See* W. S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 388 F.2d 257, 262–267 (dissenting in part).

risdiction. The court of civil appeals and the Texas Supreme Court affirmed. *See* United Services Life Ins. Co. v. Delaney, 396 S.W.2d 855 (Tex.1965), aff'g 386 S.W.2d 648 (Tex.Civ.App.—San Antonio, 1965).[5]

The reasoning of the Texas Supreme Court is important to this case. Under the Texas constitution it is well settled that Texas courts may not render "advisory opinions." *E. g.*, Alamo Express, Inc. v. Union City Transfer, 158 Tex. 234, 309 S.W.2d 815 (1958). Texas courts, therefore, can grant declaratory relief only when there is a real controversy between the parties that would actually be determined by the judicial declaration sought. 396 S.W.2d at 860. This means that before a Texas court can entertain a suit for a declaratory judgment it must have the power to settle the controversy by the entry of a final judgment. *Id.* Because this Court retained jurisdiction in *Delaney*, "obviously" for the purpose of entering a final judgment, the Texas Supreme Court felt that it lacked that power. In other words, this Court's reservation of jurisdiction to enter a final judgment rendered the proceedings in state court

"advisory in nature." *Id. See also* Note, 20 Sw.L.J. 402, 406–407 (1966); Note, 44 Texas L.Rev. 1394, 1396–1398 (1966); Comment, Abstention Under *Delaney*: A Current Appraisal, 49 Texas L.Rev. 247 (1971).

Whether the Texas Supreme Court's decision in *Delaney* was a correct construction of the Texas constitution, its own precedents, and the Uniform Declaratory Judgment Act, Tex.Rev.Civ. Stat.Ann. art. 2524–1, is of course no concern of ours.[6] What does concern us, however, is the limitation that the *Delaney* case places on our freedom to abstain in Texas cases.[7] The Texas Supreme Court's opinion in *Delaney* makes it abundantly clear that in order for the parties to be able to obtain adjudication of their relative property rights in a Texas court, the federal district court must not retain jurisdiction in this case.

We therefore reverse the judgment of the district court reaching a decision on the merits. We remand the case to the district court with instructions to dismiss Barrett's complaint without prejudice.

Reversed and remanded with instructions.

5. Following the parties' unsuccessful journey through the Texas state court system, this Court finally decided the case. *See* United Serv. Life Ins. Co. v. Delaney, 5 Cir. 1966, 358 F.2d 714.

6. Three members of the nine-member Texas Supreme Court dissented from the majority's holding that the Texas courts were without jurisdiction to hear the *Delaney* case. Responding to the argument that an opinion in *Delaney* would be "advisory in nature," Justice Steakley wrote:
   What is decided by our courts will terminate the controversy between the parties and in my view will be res judicata as to the entire case. Clearly, the judgment will be a decision made in adversary litigation in our courts and will leave nothing for the federal courts to decide.
396 S.W.2d at 867.

The Texas Supreme Court's decision not to hear the *Delaney* case has not fared any better in the hands of the commentators than has our original decision to abstain. *See* Note, 20 Sw.L.J. 402 (1966); Note, 44 Texas L.Rev. 1394 (1966).

7. At least one student commentator has concluded that the Texas Supreme Court's decision in *Delaney* "precludes abstention in Texas cases." Comment, Abstention Under *Delaney*: A Current Appraisal, 49 Texas L.Rev. 247, 257 & n. 72. It is clear, however, that the author was referring only to abstention achieved through a stay of proceedings rather than dismissal. *Id.*