PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-------------------------------------------

No. 96-4884

-------------------------------------------

D. C. Docket No. 95-2588-CV-SM

WALTER L. STONE, individually, and as Natural
Guardian of S.P.S., a minor,

Plaintiff-Appellant,

versus

GEORGENE WALL, GINA WALL MASTERSON, BROCK
GREEN,

Defendants-Appellees.

----------------------------------------------------------------

Appeal from the United States District Court
for the Southern District of Florida

----------------------------------------------------------------

(March 2, 1998)

Before EDMONDSON, Circuit Judge, and CLARK and WELLFORD*, Senior Circuit
Judges.

_____

* Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit,
sitting by designation.

**PER CURIAM:**

Plaintiffs-Appellants appeal from the district court's order of dismissal and from the district court's denial of Plaintiffs' motion to vacate, alter, or amend the order of dismissal. Because the district court erred in abstaining in this case, we are inclined to vacate and remand. But, because uncertainty exists about whether a cause of action exists under state law, we certify a question to the Florida Supreme Court.

## I.

Plaintiff Walter Stone, a natural guardian of S.P.S., and Plaintiff S.P.S., a minor, filed this diversity action against Defendants Georgene Wall, Gina Wall Masterson, and Brock Green seeking to recover damages, costs, and attorneys' fees in connection with Stone's recovery of custody of the minor child S.P.S.

Plaintiffs are residents of Mississippi. Stone is the parent and natural guardian of S.P.S., his minor daughter. He was formerly married to the mother of S.P.S., Gwen Lindgren. Defendant Green is a resident of Virginia and is an attorney for Wall and Masterson. Wall is a resident of Florida and is the mother of Lindgren (grandmother of S.P.S.). Masterson is a resident of Colorado and is Wall's daughter (aunt of S.P.S.).

In 1987 Stone and Lindgren were divorced in Virginia. In 1994, Stone exercised his visitation rights with S.P.S. at his home in Mississippi. Stone says that he then was informed by his ex-wife, Lindgren, that she had been diagnosed with brain cancer and was not expected to live more than six months. At Lindgren's request, Stone allowed the child to return to Virginia and to stay with Lindgren, for Lindgren's final days. Plaintiffs further allege that, when Stone returned with S.P.S. to Virginia, Wall asked about Stone's plans for the custody of S.P.S. upon the death of Lindgren. Wall said that she desired that custody

3

of the child be given to Masterson. Stone informed Wall that he would take full custody of S.P.S. and live in Mississippi.

Plaintiffs allege that Defendants Green, Wall, and Masterson acted with intent to interfere with Stone's custody of S.P.S. In addition, Defendants conspired, in Florida, to remove S.P.S. from Virginia to Colorado without the consent of Stone, who was the parent and natural guardian of S.P.S. According to the Complaint, Defendants (1) removed the child from Virginia before the death of her mother; (2) refused to respond to Stone's inquiries about the whereabouts of his child; (3) executed a guardianship/entrustment agreement without the knowledge and consent of Stone; (4) concealed the guardianship agreement from Stone; (5) continued to conceal the child, who Stone located only by his own efforts; and (6) refused to return the child to Stone despite repeated requests

and despite Stone's status as the natural guardian legally entitled to custody of the child.[1]

The district court concluded that Plaintiffs failed to state a claim (under Fed. R. Civ. Proc. 12[b][6]) and that, even if a claim were stated, other grounds warranted abstention from the exercise of diversity jurisdiction.  Plaintiffs filed a motion to vacate, alter, or amend the order of dismissal; the motion was denied.

II.

## A.  Diversity Jurisdiction and Abstention.

---

[1]Stone hired a private detective to determine S.P.S.'s location; and then he took physical custody of his child with the knowledge of the Federal Bureau of Investigation, the Commonwealth Attorney in Virginia, and the Cherry Hills, Colorado Police Department.

The Supreme Court in <u>Ankenbrandt v. Richards</u>, 504 U.S. 689 (1992), reaffirmed the "domestic relations exception" to exercising diversity jurisdiction and noted that this exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." 504 U.S. at 703. In addition, the Court wrote that even when subject-matter jurisdiction might be proper, sufficient grounds may exist to warrant a court's abstention from the exercise of jurisdiction. <u>Id.</u> at 704. The Court suggested that abstention in family-law disputes might be appropriate when "the suit depended on a determination of the status of the parties." <u>Id.</u> at 706. But, according to the Court, "[i]t is axiomatic . . . that abstention from the exercise of federal jurisdiction is the exception, not the rule . . . . Abstention rarely should be invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>Id.</u> at 705 (internal quotations and citations omitted).

Plaintiffs claim that this lawsuit does not seek a decree within the Ankenbrandt exception, but merely charges Defendants with a tort. Also, Plaintiffs stress that they do not have (and have never had) a marital or parental relationship with Defendants and contend that this case involves no complicated examination of custody law. In addition, Plaintiffs point out that the abstention issue was not raised by the Defendants, but by the district court.

We reverse a district court's decision to abstain when there is an abuse of discretion. Rindley v. Gallagher, 929 F.2d 1552, 1554 (11th Cir. 1991). We have previously considered the domestic relations exception in Ingram v. Hayes, 866 F.2d 368 (11th Cir. 1988), where we wrote that courts should not abstain when the following factors are absent: (1) strong state interest in domestic relations; (2) competency of state courts in settling family disputes; (3) the possibility of incompatible federal and state decrees in cases of continuing judicial supervision by the

state; and (4) the problem of congested federal court dockets. 866 F.2d at 370. We pointed out that the main point was whether the litigation would mandate an inquiry into the "marital or parent-child relationship." Id.

In considering this case, the district court acknowledged that Plaintiffs did not fall squarely within the domestic relations exception, but found that -- because the resolution of Plaintiffs' claim for damages would require an examination of the facts and circumstances of the domestic relations between the parties -- a sufficient basis for abstention existed. Also, the district court stressed that, even if Plaintiffs could state a claim, abstention would be appropriate because of (1) the need to address custody issues; (2) the federal judiciary's lack of experience in this legal area; and (3) the disruption to the balancing of state policy with respect to custody law.

The exception enunciated in Ingram is to be read narrowly and does not -- at least, ordinarily -- include third parties in its

scope. This case does not involve inquiry into the existence of a disputed parent-child relationship; nor is it a dispute between parents over a child. Here a grandmother, aunt, and their lawyer allegedly conspired to abduct, and then abducted, a minor child who had identifiable natural parents. Defendants seemingly had no legal claim of custody whatsoever: they had no court decree giving them custody of the child.[2] And, the record reflects that Defendants have never specifically argued that they had lawful custody. Rather than seeking custody through state courts, they just took the minor child.

We conclude that this case is just a tort suit for money damages. The suit does not fit our domestic-relations-exception precedents. And we are not inclined to extend that exception to include these circumstances. Because abstention

---

[2]During oral argument, Defendants' lawyer stated that a guardianship/entrustment agreement had been signed by Lindgren before her death (transferring guardianship of S.P.S. to her sister). The lawyer said that he was not addressing the "legal efficacy" of this agreement on appeal.

9

was inappropriate,[3] we now address whether, under Florida law, a cause of action exists for the alleged tort.

## B. Which State Law to Apply/the Rule 59 Motion.

On appeal, Plaintiffs claim that a cause of action exists under both Virginia and Florida law. The Complaint alleged tortious acts within Florida. After the Complaint had already been dismissed, Plaintiffs contended in their Rule 59 motion that, because the action accrued in Virginia, Virginia law should

---

[3]Abstention was also incorrect because the court abstained and then decided the case on its merits. If a court states that abstention is appropriate in a case, it should not then adjudicate the case on its merits by granting a Rule 12(b)(6) motion. The order of dismissal here defeats the purpose of the abstention doctrine, which is to abstain from reaching the merits of certain claims. See O'Hair v. White, 675 F.2d 680, 692-93 (5th Cir. 1982); Barrett v. Atlantic Richfield Co., 444 F.2d 38, 40 (5th Cir. 1971).

apply. Plaintiffs also state that, even if Florida law applies, both Virginia and Florida are common law states and recognize the common law claims of the father and minor child.

Because this case is brought into federal court based on diversity of the citizenship of the parties, the substantive law of the forum must be applied (including its rules applicable to choice-of-law problems). <u>LaFarge Corp. v. Travelers Indem. Co.</u>, 118 F.3d 1511, 1515 (11th Cir. 1997). Under Florida law, courts are required to take judicial notice of the common law and statutes of all sister states, however, "such judicial notice can only be taken after one party has raised the issue of foreign law through pleadings, thereby providing the other party with reasonable notice." <u>Schubot v. Schubot</u>, 363 So.2d 841, 842 (Fla. Dist. Ct. App. 1978). Foreign law is a fact to be pleaded and proved; and when the contrary is not alleged, the law of the sister state will be assumed to be the same as Florida law. <u>Collins v. Collins</u>, 36 So.2d 417, 417 (Fla. 1948).

The First Amended Complaint (the complaint which was the subject of the district court's dismissal) alleges the following:

> At times material . . . [Defendant Masterson] . . . committed tortious acts or engaged in activity within the State of Florida . . . which is the basis of the cause of action herein.
> . . . .
> At all times material . . . [Defendant Green] committed tortious acts . . . within the State of Florida . . . [with Defendants Wall and/or Masterson], who were present in Dade County, Florida . . . which is the basis of the cause of action herein.

Although the Complaint specifically alleged tortious acts in Florida, Plaintiffs mentioned Virginia in the following statements: (1) Plaintiff Stone and Lindgren were divorced in Virginia; (2) Plaintiff Stone had custody rights to S.P.S. under Virginia law; (3) Lindgren lived in Virginia; and (4) S.P.S. was taken from Virginia to Colorado. At no point, however, did the Complaint allege that Virginia law is the applicable law, or set out what Virginia law is, or hint that Virginia law is different from Florida law in some material respect.

12

When deciding whether to dismiss the Complaint, the district court -- given the pleadings then before it -- did not err in concluding that it would judge the Complaint under Florida law. And it was no abuse of discretion for the district court later to deny the Rule 59(e) motion after the case's dismissal. The Rule 59 motion claimed, among other things, that the choice of law to be applied to this cause of action was Virginia law. But, as far as the record shows, possible application of Virginia law was not specifically raised until the Rule 59 motion was filed. At all pertinent times before the order of dismissal, the district court was asked to look at Florida law. Therefore, when it was time to raise a dispute about choice of laws, there seems to have been no controversy about what state's law applied: Florida law. The purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed. So, the question properly presented to the district

13

court, and now to us, is whether a cause of action exists under Florida law.

## C. Existence of a Claim Under Florida Law.

The test for sufficiency of the complaint was set out by the Supreme Court in <u>Conley v. Gibson</u>:

> In appraising the sufficiency of the complaint we follow . . . the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

355 U.S. 41, 45-46 (1957). We review a district court's grant of a motion to dismiss under Rule 12(b)(6) <u>de</u> <u>novo</u>. <u>McKusick v. City of Melbourne, Fla.</u>, 96 F.3d 478, 482 (11th Cir. 1996). In doing so, we view the facts in the light most favorable for the plaintiffs-appellants. <u>Welch v. Laney</u>, 57 F.3d 1004, 1008 (11th Cir. 1995).

Plaintiffs claim that this case presents an issue of first impression and that their cause of action is based on the common law action for interference with a parent/child relationship or abduction. They rely on two cases and the Restatement of Torts, Second, § 700 to establish this claim; see Pickle v. Page, 169 N.E. 650 (N.Y. 1930); Armstrong v. McDonald, 103 So.2d 818 (Ala. Ct. App. 1958).

No Supreme Court of Florida decision squarely addresses whether a cause of action exists in the circumstances presented by this case. So, we certify the following question to the Supreme Court of Florida for resolution:[4]

---

[4]We are aware that Defendants objected to personal jurisdiction and venue. And, these defenses were not addressed by the district court. But, we have looked at the record and are comfortable that for at least one Defendant, Georgene Wall -- a Florida resident -- personal jurisdiction and venue are appropriate. So, the question of whether the Complaint states a claim should be outcome-determinative, at least for this Defendant. Jurisdiction may also be proper for the other Defendants. See Wilcox v. Stout, 637 So.2d 335, 336-37 (Fla. Dist. Ct. App. 1994) (if any member of a conspiracy commits tortious act within state in furtherance of conspiracy,

15

**WHETHER A CAUSE OF ACTION EXISTS FOR INTERFERENCE WITH THE PARENT/CHILD RELATIONSHIP WHERE A THIRD PARTY (THAT IS, A NONPARENT WHO HAS NO CUSTODY RIGHTS OVER THAT CHILD) INTENTIONALLY ABDUCTS A MINOR CHILD FROM A PARENT LEGALLY ENTITLED TO THE CHILD'S CUSTODY.**

**Our phrasing of this question is intended in no way to limit the Supreme Court of Florida in its inquiry and consideration of the various problems and issues posed by the entire case as the Supreme Court perceives them to be. To assist its determination, the entire record and the briefs of the parties shall be transmitted to the Supreme Court of Florida.**

**QUESTION CERTIFIED.**

---

**then all conspirators are subject to jurisdiction); United States v. Schlei, 122 F.3d 944, 975 (11th Cir. 1997) (conspiracy may be prosecuted in the district where an overt act was committed -- overt act need not be a crime). Thus, we feel justified in asking our colleagues on the Florida Supreme Court to consider advising us now on this question of Florida law.**